## D. E. FOOTE & COMPANY, a Corporation Duly Incorporated Under the Laws of the State of Delaware, and WILLIAM H. McGEE, Trading as William H. McGee & Company, *vs.* WILLIAM B. CLAGETT, Comptroller of the State of Maryland, and THOMAS M. JAMART, Constable.

*Interstate commerce; unconstitutional restriction; taxation of oysters transported; Acts of 1910, Ch. 735.*

Chapter 735 of the Acts of 1910, among other things, imposes a tax of two cents a bushel on all oysters that are sold by commission men and others selling less than by cargo, and requires all transportation companies carrying oysters to furnish a copy of the manifest showing the number of oysters on board. *Held,* the law is void and unconstitutional, as being a restriction upon interstate commerce.　　　　　　p. 239

The act contemplates the transportation (and taxation) of oysters as freight, whether it be from this State to another State, or from another State into this State, for sale, and either transaction constitutes interstate commerce.　　　p. 239

Since the act segregates one-half the tax for the re-shelling of the oyster bottoms of the State, the law is not within the exception of section 10 of Article 1 of the Constitution of the United States, authorizing the States to impose import or export duties, sufficient for their inspection laws.　　　p. 241

As the law is unconstitutional as to the oysters transported from without the State, it is not to be presumed that it was the intention of the legislature to apply the law to Maryland oysters alone, and so discriminate against the citizens of the State, in favor of those beyond its limits; and the whole law is void.　　　　　　　　　　　　　　　　　p. 241

The bringing of goods from the seller to the buyer is commerce.                                                    p. 237

*Decided June 23rd, 1911.*

Appealed from the Circuit Court of Baltimore (HEUISLER, J.).

The cause was argued before BOYD, C. J., PEARCE, BURKE, URNER and STOCKBRIDGE, JJ.

*W. Thomas Kemp* (with whom was *George Whitelock* on the brief), for the appellants.

*Frederick Dallam* (with whom was *Isaac Lobe Straus, Attorney-General* on the brief), for the appellees.

PEARCE, J., delivered the opinion of the Court.

This case originated in a bill of complaint filed by D. E. Foote and Company, a corporation under the laws of Delaware, and William H. McGee, trading as William H. McGee & Co., in the Circuit Court of Baltimore City, against William B. Clagett, Comptroller of the State of Maryland, and Thomas M. Jamart, a constable of the City of Baltimore, to restrain the collection by them of a tax or charge of two cents per bushel upon certain quantities of oysters in the shell, bought by said plaintiffs at their respective factories for the packing of oysters in Baltimore City, during the oyster season of 1910 and 1911, and prior to December 10th, 1910; which tax or charge was imposed by Chapter 735 of the Acts of 1910. Subsequently, J. Langrall and Company, a corporation; The C. L. Applegarth Company, a corporation, and William H. Killian, trading as W. H. Killian & Co., were, upon their respective petitions, made parties plaintiffs, and prayed for similar injunctions upon like grounds, they being oyster packers in like condition as the original plaintiffs, and preliminary injunctions were accordingly granted to the original plaintiffs.

The bill alleged that the plaintiffs were each oyster pack-
ers in Baltimore City, and large buyers of oysters in the
shell taken from oyster beds located within the States of
Maryland, Virginia and New Jersey, and brought therefrom
in vessels and cars to said factories. The bill then set out
the material provisions of Chapter 735 of 1910, as follows:

Chapter 735 of the Acts of the General Assembly of Mary-
land passed at the Session of 1910, entitled "An Act to
increase the productivity of the natural oyster beds or bars
of the State, and for that purpose to repeal section 69 of
Article 72 of the Code of Public General Laws and to re-enact
said section with amendments and to add to said article a new
section, to come in after section 69, and to be known as sec-
tion 69A. And to add five other new sections to said article
to come in after section 119, and to be known as sections
120, 121, 122, 123 and 124 respectively," provides in part
as follows:

"Sec. 69. It shall be the duty of the Commander of the State
Fishery Force, at the commencement of or during the oyster
season in each year, to appoint from the counties producing
oysters for packing purposes in the State, not exceeding twenty
special inspectors to be appointed as follows: Two each from
Anne Arundel, St. Mary's, Talbot and Wicomico Counties;
three each from Dorchester, Somerset and Queen Anne's Coun-
ties, and one each from Kent, Calvert and Charles Counties, at
a salary of forty-five dollars per month, during the oyster sea-
son, and they shall be stationed at such places as in the judg-
ment of the Commander of the State Fishery Force their serv-
ices may be needed. Before assuming the duties of their offices
the said special inspectors shall take an oath, to be administered
by said Commander, to diligently and faithfully discharge the
duties of their said offices. The said special inspectors shall
inspect all oysters in the district to which he is assigned upon
the inspection of any such oysters each special inspector shall
make a certificate of the number of bushels in triplicate, one of
which shall be given to the purchaser; one to the seller and the
other daily to the general measurer and inspector of the district
where such inspection occurred. A charge of *two cents* per

bushel is hereby levied, one-half of which is to help defray the expense of such inspection (of oysters), and the other expenses of the State Fishery Force, and the other half of which is to be expended in *re-shelling* and otherwise cultivating and improving the natural oyster beds and bars in the waters of the State, to be charged equally to the buyer and seller, but to be paid weekly to the Comptroller of the State Treasury, or his agent, by the buyers, the certificate given the General Measurer and Inspector shall be by him mailed weekly to the Comptroller, or his agent, and in case the amounts of money shown to be due, not paid in one week thereafter to the Comptroller, or his agent, which is hereby required to be done, the properties of the parties so indebted may be levied on and sold by the said Comptroller, or his agent, as in cases of taxes in default, without other process of law. The tax of two cents per bushel hereby levied is also made a charge on oysters sold by commission merchants and others selling by less than the cargo, and also a tax of six cents per barrel containing not more than three bushels, on oysters in bag, a tax of four cents per bag, containing not more than two bushels, and all transportation companies carrying oysters in the shell consigned to Baltimore shall furnish to the oyster inspector or collector of oyster tax a copy of his manifest, showing the number of bushels on board on arrival of steamer and to whom consigned, and the special inspectors are charged with the duty of seeing that proper returns are made for the purpose of this Act, by such commission merchants or retailers, and in the performance of the duty the said special inspectors are authorized and directed to visit the places where oysters less than cargoes are sold and get from such sellers a statement, under oath, as to the number of bushels sold from time to time, and to return to the general measurers and inspectors a certificate thereof to be forwarded to the Comptroller, as is required in the case of the certificates for cargoes. And the payments of the amounts so found to be due shall be similarly enforced. All such special inspectors may be removed at any time by the Commander for neglect or malfeasance in office, and said Commander shall report to the Governor any neglect of a general measurer or inspector. The Commander of the State of Fishery Force shall furnish to each of said special inspectors certificates

in book form supplied with carbon paper, so that each of said triplicate certificates shall be exactly the same. The form of the certificate shall be as follows:

19——.

I hereby certify that I have this day inspected for Captain Schooner a cargo of oysters, sold to ——————— and found the same to contain ——————— bushels of merchantable oysters.

Signed———————

69A. The Comptroller of the State Treasury shall pass one-half of the amounts paid in by the buyers, as provided in section 69, to the credit of a fund to be known as a 'Natural Oyster Bed Re-Shelling Fund.' "

The bill then avers that said act is unconstitutional and void:

(*a*)  Because it is in violation of Article 1, section 8, of the Constitution of the United States, which vests in Congress exclusive power to regulate commerce between the States.

(*b*)  Because it violates Article 1, section 10, of the Constitution of the United States, which prohibits any State, without the consent of Congress, from laying any duties upon imports or exports, except such as are absolutely necessary for executing its inspection laws.

(*c*)  Because the title of the act is insufficient under Article 3, section 29, of the Constitution of the State of Maryland.

(*d*)  Because it violates Article 15 of the Bill of Rights of Maryland, in imposing a direct tax upon property, and not upon the owner thereof, the same not being laid with a political view for the good government and benefit of the community.

(*e*)  Because it is in other respects repugnant to the Constitution of the United States and to the Constitution of the State of Maryland, respectively.

(*f*)  Because said act has been repealed by Chapter 413 of the Acts of 1910, approved by the Governor on the same day (April 13th, 1910), as Chapter 735.

The bill further avers that the Comptroller of the State, acting through said constable, and in pursuance of said Chapter 735, has levied upon certain valuable property of the plaintiffs to enforce the collection of said tax or charge, and is about to remove and sell said property for the payment of said tax or charge;

And that part of the oysters so purchased by said plaintiffs respectively were taken and brought in vessels and cars from the waters of Virginia and New Jersey, and the remainder from the waters of Maryland.

The defendants both answered, admitting all the allegations of fact contained in the bill, but alleging that the validity, operation and effect of the Acts of 1910, Chapters 735 and 413, are matters of law to be determined by the Court, and insisting upon all matters of defence to the bill which might have been availed of by demurrer, and praying the Court to retain jurisdiction, and ascertain the amount which the answer alleges to be due from the plaintiffs, respectively, under said Chapter 735, and to enter a decree therefor against the said respective plaintiffs.

An agreement of counsel was also filed submitting the case for decree upon the bill, answer, and the facts contained in said agreement.

This agreement details the history of the enactment of Chapters 735 and 413 as bearing upon the averment of the bill that the former was repealed by the latter.    It shows that each of the plaintiffs had paid the special license tax of $25.00 prescribed in section 77 of Article 72 of the Code of Public General Laws of Maryland, up to and including the season of 1910 and 1911, and that each plaintiff was regularly assessed for miscellaneous stock at the factory, and had each paid State and city taxes annually on such assessments.

It also states the number of bushels of oysters in the shell purchased by each plaintiff from the waters of Maryland, Virginia and New Jersey, respectively, during the season

of 1910 and 1911, and delivered at their respective factories in vessel loads, or in barrels and bags, and statements were attached to said agreement of facts, showing the amounts claimed by the defendants, and admitted by the plaintiffs to be due from each of them on account of said tax or charge, if the same should be determined by the Court to be enforceable under the provisions of Chapter 735 of 1910.

. The Circuit Court sustained said act as constitutional and valid; and dissolved the injunctions and dismissed the bill, and this appeal is from that decree.

The first and most serious objection urged to the validity of this act is that it violates that provision of the Constitution of the United States which declares that "Congress shall have power to regulate commerce with foreign nations and among the several States." In approaching the consideration of this question, it may be well to recall the language of JUDGE ALVEY, in *State* v. *C. & P. R. R. Co.*, 40 Md. 44, where the taxing power of the State was challenged upon the ground mentioned above. The Court said: "It is proper to say, that the taxing power of the State is of vital importance to it; indeed, so essential is the power, that the very existence of the State depends upon the right to exercise it. All persons and property, therefore, within the jurisdiction of the State, are liable to it; and the power is conferred upon the State for the benefit of the entire body politic. The power resides in the State as an attribute of its sovereignty, and the right of the legislature, as the representatives of the people, to exercise it, should never be questioned, except in plain cases, where the power is relinquished for valid consideration, or where to prevent its abuse, it has been placed under restriction, either as to the subjects liable to it, or the mode and manner of its exercise. That the State's power of taxation has been restrained made subject to limitation by the Federal Constitution as to certain subjects, is clear, and it is equally clear, that with respect to the mode and manner of exercising the power of the Legislature, it has been

restrained by the Constitution of this State." The ultimate questions for our determination, therefore, are (1) whether the transportation of oysters out of this State into another State, or their transportation from another State into this State, constitutes commerce within the meaning of the Constitution of the United States; and (2) if it does, then whether Chapter 735 is an invasion of the right of Congress to regulate such commerce. But preliminary to these, is the question of whether the power to regulate commerce is exclusively vested in Congress, or whether it can be exercised by the State when Congress has not exerted its power. In *Gibbons* v. *Ogden,* 9 Wheaton, 1, it was declared that this power "comprehends every species of commercial intercourse between the United States and foreign nations, * * * and among the several States; * * * that it does not stop at the external boundary line of each State; * * * and that the grant of this power carries with it the whole subject, leaving nothing for the State to act upon."

In *Robbins* v. *Taxing District of Shelby County,* 120 U. S. 489, it was said that "this power is necessarily exclusive whenever the subjects of it are national in their character, or admit only of one uniform system or plan of regulation. * * * That where the power of Congress to regulate is exclusive, the failure of Congress to make express regulations, indicates its will that the subject shall be left free from any restrictions or impositions, and that any regulation of the subject by the States, except in matters of local concern only, as hereafter mentioned, is repugnant to such freedom, * * * and that the only way in which commerce between the States can be legitimately affected by State laws, is when, by virtue of its police power and its jurisdiction over persons and property within its limits, a State provides for the security of the lives, limbs, health and comfort of persons and the protection of property; or when it does those things which may otherwise incidentally affect commerce; such as the establishment and regulation of highways,

canals, railroads, wharves, ferries and other commercial facilities; the passage of inspection laws to secure the due quality and measure of products and commodities; the passage of laws to regulate or restrict the sale of articles deemed injurious to the health or morals of the community; the imposition of taxes upon persons residing within the State, or belonging to its population, and upon avocations and employments pursued therein, not directly connected with foreign or interstate commerce, or with some other employment or business exercised under authority of the Constitution and laws of the United States; and the imposition of taxes upon all property within the State, *mingled with and forming part of the great mass of property therein.* But in making such internal regulations a State can not impose taxes upon persons passing through the State, or coming into it merely for a temporary purpose, especially if connected with interstate or foreign commerce; nor can it impose such taxes upon property imported into the State from abroad, *or from another State, and not yet become part of the common mass of property therein;* and no discrimination can be made, by any such regulations adversely to the persons or property of other States, and no regulations can be made directly affecting interstate commerce. * * * In a word, it may be said that in the matter of interstate commerce the United States are but one country, and are, and must be, subject to one system of regulations, and not to a multitude of systems." We have reproduced this passage here, because, while it emphasizes the exclusive power of Congress to regulate commerce in its national character and scope, it also enumerates concisely, but fully, and with unusual precision, the exceptions which are established by numerous decisions of the Supreme Court of the United States.

In *Brown* v. *State of Maryland,* 12 Wheaton, 419, *Gibbons* v. *Ogden* was approved, the Court saying in that case that "the power was declared" to be complete in itself, and to acknowledge no limitations other than are prescribed by

the Constitution. We deem it unnecessary now to reason in support of these propositions. "* * * Commerce * * * is intercourse; one of its most ordinary ingredients is traffic; * * * To what purpose should the power to allow importation be given, unaccompanied with the power to authorize a sale of the thing imported? *Sale is the object of importation, and is an essential ingredient of that intercourse of which importation constitutes a part. * * * Congress has a right not only to authorize importation, but to authorize the importer to sell.*"

In the *Passenger Cases,* 7 Howard, 416, in the opinion of Mr. Justice Wayne, it is said: "Commerce consists in selling the superfluity; in purchasing articles of necessity, as well productions, as manufacturers; in buying from one nation, and selling to another; or in transporting the merchandise from the seller to the buyer, to gain the freight." In *Phil. & Reading R. R. Co.* v. *Pa.,* 15 Wallace, 232, it was said: "It makes no difference whether this interchange of commodity is by land or by water. In either case, *the bringing of the goods from the seller to the buyer is commerce * * *.* Beyond all question, the transportation of freight, or of the subjects of commerce, for the purpose of exchange or sale, is a constituent of commerce itself."

In that case an act of the State of Pennsylvania required every transportation company doing business in the State, to pay to the State Treasurer, for the use of the State, two cents per ton on each ton of coal carried by said companies, and the Supreme Court in its opinion, asks, "Why, then, is not a tax upon freight transported from State to State, a regulation of interstate transportation, and, therefore, a regulation of commerce among the States?" And it then proceeds to say that the act in question "so far as it applies to articles carried through the State, or articles taken up in the State, and carried out of it, or articles taken up without the State, and brought into it, is unconstitutional and void."

The case last cited was considered by the Court of Appeals of Maryland in *State* v. *C. & P. R. R. Co.,* 40 Md. 22, and

it was there adopted as the basis of the opinion delivered
by the Court. The only question presented in that case
was whether the Act of 1872, Chapter 274, was constitu-
tional or not. That act provided, "That it shall not be law-
ful for any coal mining company or association in this State
to transport any coal mined in this State, on any railroad,
canal, or by any boat or vessel, from any mine in this State,
to any place in this State or elsewhere, for sale, until a State
tax of two cents per ton of 2,240 pounds on said coal, be
first paid to the company undertaking to transport the same
immediately from the mine, or payment of the same be pro-
vided for to the satisfaction of the said company undertaking
to transport the same as aforesaid." Subsequent sections of
said act made it unlawful for any transportation company
doing business in the State to receive any such coal until the
tax was paid to the company, which was declared liable to
the State therefor. In the course of the opinion in that
case, JUDGE ALVEY said: "The tax now under consideration
is imposed directly upon the coal transported, and only on
that transported for sale; and as to all such portion of the
coal as may be transported directly from the mines to places
or markets beyond the limits of the State for sale, the tax
would plainly appear to be an interference with and a restric-
tion on interstate commerce, and hence in contravention of
that provision of the Federal Constitution which gives to
Congress the power to regulate commerce among the several
States.

Indeed, we are not left to construction or speculation as
to this question. It has been recently before the Supreme
Court of the United States, and has there been decided in
a case so entirely, analogous to the present, that we are
relieved from doing more than to state the nature and ruling
of that case." He then states the ruling of the Supreme
Court, and the reasoning upon which it is based, which
it is unnecessary to repeat here, and concludes as follows:

"It is quite clear that the act contemplates the transporta-
tion of coal as freight beyond the State for sale; and thus

the payment of the tax becomes a condition precedent, and consequently an impediment to the prosecution of this branch of commerce. And though the tax be levied upon all coal transported, as well that transported to places within the State, as that transported beyond its limits, still, that can make no difference in the effect of the law. The State is at liberty to tax her internal commerce, but if an act to tax interstate commerce be unconstitutional, it is not cured by including in its provisions subjects within the taxing power of the State. This is explicitly decided by *R. R. Co.* v. *Pa.,* 15 Wall. 276, 277.

Without saying more in regard to this question, we are of opinion, upon the authority cited, that the Act of 1872, Ch. 274, so far as it affects to impose the tax upon coal transported from the mines in this State to places beyond the State for sale, is unconstitutional and void."

We have not been able to discriminate that case from the one before us. To us it seems to be conclusive. Paraphrasing the language of that case, it is quite clear that the Act of 1910, Chapter 735, contemplates the transportation of oysters as freight, whether it be from this State to another State into this State, for sale, and either transaction constitutes interstate commerce. The packer is forbidden to buy oysters in course of transportation, except in the presence of the inspector who must certify the amount of the tax, and thus the payment of the tax becomes a condition precedent to the sale, and consequently an impediment to the prosecution of that branch of commerce. That provision of the act which requires all transportation companies carrying oysters in the shell, to furnish to the inspector a copy of his manifest showing the number of bushels on board and to whom consigned, is conclusive that the tax is on oysters, *transported as freight.* It is freight which is transported, and there can be no difference in principle in this respect between oysters and coal. The only distinction between the two cases, is, that in one the tax is determined at the com-

mencement of the transportation, and in the other at its termination.

The learned judge of the Circuit Court, doubtless in recognition of the duty to sustain the law of the State if possible to do so, sought to discriminate the two cases upon two grounds; 1st, That ninety per cent. of the coal in that case was designed for shipment out of the State, whereas in the present case only about one-third of the oysters were shipped from other States; but it is a sufficient answer to this contention, that right and wrong can not thus be apportioned; 2nd, That there is an inherent difference in respect of the ownership of coal and oysters, the former being the absolute property of the private owner of the soil which it underlies, and the latter being the property of the State which owns the soil covered by its navigable waters. But this distinction can have no application to oysters taken in the waters of other States and brought into this State for sale, whether as the property of that other State, or of individuals who have acquired ownership under the laws of that State. The learned judge of the Circuit Court in stating his conclusion that the constitutional objection we are considering, does not affect this case, frankly said, "This particular conclusion is reached by me after a careful and repeated reading of the dissenting opinion of JUDGE STEWART, in 40 Md." However vigorous and persuasive may be that opinion, it did not prevail as the opinion of the Court, nor has it sufficed during the thirty-seven years which have elapsed since its rendition to shake the authority of the opinion of the majority which has been cited with approval so late as *State* v. *Applegarth,* 81 Md. 302.

The cases which uphold inspection laws of the States can not rescue this case from the controlling effect of the decision in 40 Md.

No tax can be laid by a State under Article 1, section 10, of the Constitution of the United States "except such as may be absolutely necessary for executing its inspection laws," and the Courts are to judge of the reasonableness of the tax

for that purpose. This act, upon its face, discloses the fact that the charge of two cents per bushel is not necessary for the execution of the law, since it segregates one-half the charge, and applies it to reshelling the oyster bottoms of the State, thus enriching the resources of the State by a tax upon interstate commerce. The title of this act, "to increase the productivity of the natural oyster bars or beds of this State," read in connection with the application of one-half the tax just mentioned, demonstrates that it is in fact a revenue measure under the guise of an inspection law.

The appellees contend that "there is no element of shipment from other States into this State as an article of interstate commerce, the oysters from Virginia and New Jersey being brought in and mingled with the other property in the State of Maryland, sold here after hawking around from one canning house to another." But it has been expressly decided that *"only by sale* does the article brought from another State become mingled in the common mass of property within the State, *up to which time the State has no power to interfere by any action."* Leisy v. Hardin, 135 U. S. 100.

We regret that we are forced to hold that this law is void for the reason stated, but we can not escape that conclusion. As was said in *State* v. *C. & P. R. R., supra,* "It would not be fair to indulge a presumption that the Legislature would have passed the act in question with a knowledge that it could only be effectual as to the coal (oysters) transported within the State, and thus intentionally have discriminated against the citizens of the State and in favor of those beyond its limits."

In view of the conclusive effect of the one objection to the validity of this law which we have considered, we will not prolong this opinion by considering any of the other objections urged.

The decree of the Circuit Court will be reversed and the cause be remanded, that a decree may be passed making perpetual the injunctions heretofore granted, and granting

injunctions in like manner to each of the intervening peti-
tioners seeking that relief.

> *Decree reversed, and cause remanded
> for further proceedings in confor-
> mity with this opinion.*