D. E. FOOTE & COMPANY, a Corporation, Duly
Incorporated Under the Laws of the State of
Delaware, et al., *vs.* CHARLES H. STAN-
LEY, Comptroller of the State
of Maryland.

*Oyster inspection laws: Act of 1910, Ch.* 413; *constitutionality.*
*Police power. State: suits against—; immunity; no*
*set-off as recoupment for excess payments.*

Art. 1, sec. 2 of the Constitution of the United States does not
prohibit the right of one state to tax articles brought into it
from another.                                             p. 339

Ch. 413 of the Acts of 1910, for the sake of helping to defray
the oyster inspection laws, imposes a tax of one cent a
bushel upon all oysters unloaded from vessels at the place
where the oysters are to be no further shipped in bulk in
vessels. *Held*, that this act is not in violation of Art. 1, sec.
2 of the Constitution of the United States denying to the
State the right to levy any imposts or duties on imports or
exports, except where may be necessary for the enforcement
of inspection laws.                                       p. 340

In determining whether such a charge is a reasonable one, as
a contribution to the State's oyster inspection fund, consid-
eration should be given not only to the special inspection
provided by the Acts of 1910, but to the general and wider
inspection laws provided by other sections of the Code.
                                                         p. 345

Such inspection fees are imposed under the police power of
the State and the Act of 1910, Ch. 413 is not repugnant to
the 15th Art. of the Bill of Rights providing direct taxation.
                                                         p. 347

Nor is the act in violation of Art. 1, sec. 8 of the Constitution
of the United States which gives to Congress the right to
regulate interstate commerce.                       pp. 342-343

The appellants had made payments to the State of oyster
inspection fees under Ch. 735 of Acts 1910, since then
declared unconstitutional. It was *held,* that they could not in
a suit for fees due under the Acts of 1910, Ch. 413, be
allowed to recoup the payments made under the former law,
as that would infringe upon the immunity of the State from
suits in its own Courts.                              p. 347

*Decided November 17th, 1911.*

Appeal from the Circuit Court of Baltimore City (HEUIS-
LER, J.).

The cause was argued before BOYD, C. J., PEARCE, BURKE,
THOMAS, PATTISON, URNER and STOCKBRIDGE, JJ.

*W. Thomas Kemp* and *George Whitelock,* for the appel-
lants.

*Frederick Dallam* and *Isaac Lobe Straus,* the Attorney
General, for the appellees.

PEARCE, J., delivered the opinion of the Court.

The bill of complaint in this case was filed by the appel-
lants in the Circuit .Court of Baltimore City to restrain
·Charles H. Stanley, comptroller of the State, from collect-
ing a charge of *one* cent per bushel upon all oysters unloaded
from vessels at the place where oysters are to be no further
shipped in vessels, which charge is imposed by section 69 of
Article 72 of the Code of Public General Laws of Maryland
as re-enacted by Chapter 413 of 1910. This charge is levied
"to help defray the expenses" of the system of inspection
provided by that article, of all oysters taken from the waters
of the State for sale, and sold by commission merchants or
others, and "the other expenses of the State Fishery Force,"
upon which the duty of making such inspection is laid by
that article. During the period for which the charges were

made, the collection of which is here sought to be restrained, the appellants have received at their several places of business 494,260 bushels of Maryland oysters, and 243,935 bushels of Virginia and New Jersey oysters.

In the case of *Foot & Co.* v. *Wm. B. Clagett,* Comptroller of the State, in which the opinion was filed June 23, 1911, and reported in 116 Md. 228, a similar bill was filed to restrain the collection of a charge of *two* cents per bushel upon all oysters unloaded from vessels as above stated, and sold by commission merchants or others, which charge was imposed by section 69 of Chapter 735 of 1910. Under that act, one-half of that charge was to help defray the expenses of the same inspection provided for by section 69 of Ch. 413, Acts of 1910, and the other half was to be expended in reshelling, cultivating and improving the natural oyster beds and bars in the waters of the State. Section 69 of Ch. 413, Acts of 1910, is identical in language with section 69 of Ch. 735, Acts of 1910, except that in the latter the charge was two cents per bushel—only one-half of which was for expense of inspection, and the other half was required to be expended in developing and cultivating the natural oyster bars and beds of the State; while under section 69 of Ch. 413, Acts of 1910, the charge was only *one* cent per bushel, the *whole* of which was to help defray the expense of inspection, and the other expenses of the State Fishery Force, through whose agency the inspection is required to be made. Sec. 69 of Ch. 735, Acts of 1910, was set out in full in the opinion in the former case, and it will be unnecessary, therefore, to set out here section 69 of Ch. 413, Acts of 1910. In the former case, section 69 of Ch. 735, Acts of 1910, was held void solely upon the ground that in addition to the charge for inspection, it also imposed a further charge for reshelling and improving the oyster bars and beds of the State, thus making the law a revenue measure, and bringing that case within the authority of *State* v. *C. & P. R. R. Co.,* 40 Md. 22, in which the act imposing a tonnage tax upon all coal mined in this State and transported to any

place in this State or elsewhere, was held void as a restriction upon interstate commerce. None of the other grounds upon which the validity of section 69 of Chapter 735 was assailed, were considered in that case, and it is virtually conceded by both parties to this case that as the result of the decision in the former case, Ch. 413, Acts of 1910, was left in force until also declared unconstitutional and void.

Three of the other grounds alleged in the former case against Chapter 735 are renewed here as against Chapter 413, and they are these:

. (*a*) Because it is repugnant to Article 1, section 8, of the Constitution of the United States, which vests the Congress of the United States with exclusive power to regulate commerce with foreign nations and among the several States.

(*b*) Because it is repugnant to Article 1, section 10 of the Constitution of the United States which forbids any State to lay any duties on imports or exports except what may be absolutely necessary for executing its inspection laws; "in that said charge is used for purposes other than the execution of the inspection law of Maryland, and that the charge therein prescribed is far in excess of what is needed for the execution of the inspection laws of said State."

(*c*) "Because it is repugnant to Article 15 of the Bill of Rights of the Constitution of the State of Maryland' which provides 'that every person in the State, or persons holding property therein, ought to contribute his proportion of public taxes for the support of the Government according to his actual worth in real or personal property; yet fines, duties or taxes, may properly or justly be imposed or laid, with a political view for the good government and benefit of the community,' in that said act imposes a direct tax upon property, and not upon the owner thereof, and that, quite irrespective of the value of said property, the said tax is not laid with a political view for the good government and benefit of the community."

The Circuit Court held the law to be constitutional and valid, and dismissed the bill, and this appeal is from that decree.

We shall consider these three objections of the appellants to the constitutionality of this law in the following order, somewhat different from that in which they are stated in the bill:

1. That based upon Art. 1, sec. 10, Constitution of the United States. It is quite clear, in our opinion, that this section of the Constitution can have no application to this case. There is no allegation in the bill, nor in the agreed statement of facts filed in the case, that these appellants, or any of them, are dealers in oysters brought from any foreign country, or that any of the oysters for the inspection of which the charge is imposed in this case, were brought from any foreign country. On the contrary the only allegation of the bill as to the places from which the oysters in which they deal are brought, is that they are brought "from the oyster beds located within the States of Maryland, Virginia, and New Jersey," respectively, and the agreed statement of facts shows that all the oysters in respect to which this charge is laid, came from the three States above named, and in the proportions stated in the agreed statement of facts.

In *Woodruff* v. *Parham,* 8 Wall. 123, Mr. JUSTICE MIL-LER, critically considered the language of the Constitution of the United States, with reference to the meaning of the correlative terms "impost," "imports" and "exports," as used therein, and the history of its formation and adoption, and it was there determined, without dissent from any member of the Court, that no intention existed to prohibit by this clause, the right of one State to tax articles brought into it from another, and that therefore the constitutional provision against taxing imports by the States, does not extend to articles brought from another State. This conclusion was reached, as declared by the Court, without questioning the authority, or departing from the principles, laid down in *Brown* v. *Maryland,* 12 Wheat. 419, which case Mr. JUSTICE

MILLER says was well decided upon another ground there taken; namely, that the tax in that case "was a regulation of commerce, a tax imposed upon the *transportation* of goods from one State to another over the high seas, in conflict with that freedom of transit of goods and persons between one State and another which is within the rule laid down in *Crandall* v. *Nevada,* 6 Wall. 35, and with the authority of Congress to regulate commerce among the States."

That case has been approved and followed in later cases, notably in *Pittsburg & Southern Coal Co.* v. *Louisana,* 156 U. S. 590, *Patapsco Guano Co.* v. *Board of Agriculture,* 171 U. S. 345, and is now the settled doctine of the Supreme Court. *New Mexico* v. *Denver & Rio Grande R. R. Co.,* 203 U. S. 38.

If the law now before us is repugnant to the Constitution of the United States, such repugnancy must be found in some other clause of the Constitution. It may be observed before passing from the consideration of this clause of the Constitution, that even as to imports from foreign countries, the right of the States to lay such imposts or duties as are absolutely necessary for executing their inspection laws, is expressly declared in that clause, thus recognizing by clear implication the right of the States to pass inspection laws as distinguished from revenue measures.

2. We will now turn to section 8 of Article 1 of the Constitution of the United States which vests Congress with exclusive power "to regulate commerce with foreign nations, and among the several States, and with the Indian Tribes," and which is the only other clause of that Constitution to which this law is alleged to be repugnant.

In *Robbins* v. *Taxing District of Shelby County,* 120 U. S. 489, it was said that the power to regulate commerce between the States was exclusive "and that any regulation of the subject by the States, *except in matters of local concern only, as hereinafter mentioned,* is repugnant to such freedom * * * and that the only way in which commerce between the States can be legitimately affected by State laws, is

when by virtue of its police power and its jurisdiction over persons and property within its limits, a State provides for the security of the lives, limbs, health and comfort of persons and the protection of property, *or when it does those things which may otherwise incidently affect commerce;* such as * * * *the passage of inspection laws to secure the due quality and measure of products and commodities, etc.;*" and that case has been since consistently and unhesitatingly followed in the Supreme Court. Mr. Justice Miller, in the *Slaughter House Cases,* 16 Wall. 36, declared the police power to be incapable of exact definition or limitation, and "that all persons and property within the State, in the exercise of that power" are subjected to all kinds of *restraints and burdens* in order to secure the general comfort, health and *prosperity of the State.* Of the perfect right of the Legislature to do this, no question ever was, or upon acknowledged general principles, ever can be made so far as natural persons are concerned." The only question therefore upon this branch of the case is whether this law is really an inspection law, or a revenue law in disguise.

In *Pittsburg & Southern Coal Co. v. La.,* 156 U. S. 590, an act of that State providing for two guagers of coal and coke boats, and requiring the measurement by them of all coal or coke brought in the State on boats or barges, and fixing a charge of $10 for each boat, and $5 for each barge, to be paid by the seller, was held not to be a regulation of commerce, "but was properly to be regarded as a part of those innumerable police regulations which every State may enact for the convenience and comfort of its inhabitants in the conduct of their business."

In *Patapsco Guano Co. v. Board of Agriculture of North Carolina,* 171 U. S. 345, an act of that State imposed a charge of twenty-five cents per ton for inspection of fertilizers, to be paid before delivery to agents, dealers or consumers.

The appellant sought to enjoin the collection of this charge on the ground that the law was in violation of section 8, and also of section 10 of Article 1 of the Constitution of the United States. The Circuit Court dismissed the bill, and on appeal the Supreme Court affirmed the decision.

The appellants contended, as the appellants in the present case contend, that the charge required to be paid was so excessive that the act could not be sustained as a legitimate inspection law, or as a valid exercise of the police power.

In that case CHIEF JUSTICE FULLER, speaking of the essential character of inspection laws said: "Inspection laws are not in themselves regulations of commerce, and while their object frequently is to improve the quality of articles produced by the labor of a country and fit them for exportation, yet they are quite as often aimed at fitting them, or determining their fitness, for domestic use, and in so doing *protecting the citizen from fraud.* Necessarily, in the latter aspect, such laws are applicable to articles imported into, as well as to articles produced within, a State, * * * Whenever inspection laws act on the subject before it becomes an article of commerce, they are confessedly valid, and also when, although operating on articles brought from one State into another, they provide for inspection in the exercise of that power of self-protection commonly called the police power. No doubt can be entertained of this where the inspection is manifestly intended and calculated in good faith to protect the public health, the public morals, or the public safety, *and it has now been determined that this is so, if the object of inspection is the prevention of imposition upon the public generally,* * * * *to protect the citizens from being cheated generally;*" citing *Plumley* v. *Massachusetts,* 155 U. S. 461, and *Schollenberger* v. *Pennsylvania,* 171 U. S. 1.

In *New Mexico* v. *Denver and Rio Grande R. R. Co.,* 203 U. S. 38, the same view is expressed as to the ordinary object and scope of inspection laws, but the Court proceeded

to say "We see no reason why an inspection law which has for its purpose *the protection of the community against fraud and the promotion of the welfare of the people* cannot be passed in the exercise of the police power, when the legislation tends to subserve the purpose in view." The act there in question prohibited the receipt by common carriers for transportation beyond the limits of the territory, of any hides which did not bear the evidence of inspection required by act of the territory, and the Court added to what we have quoted above, the following: "The exercise of the police power may and should have reference to the peculiar situation and needs of the community. The law under consideration, designed to prevent the clandestine removal of property in which a large number of the people of the territory are interested, seems to us an obviously rightful exercise of this power." It will be seen later that that case bears a special analogy to the case now before us.

The appellants in the present case have earnestly contended that the charge imposed by the law is excessive in fact, because it appears from the statements of receipts and disbursements of the oyster fund contained in the agreed statement of facts that the charge is, much more than sufficient to pay the mere salaries of the special inspectors provided for by section 69 of Chapter 413 of 1910, Article 72 of the Code, and that the Court in the previous case of *Foote & Co.* v. *Clagett, supra,* said that "the Courts are to judge of the reasonableness of the tax."

When that case was before us the law we were then considering imposed a charge of *two* cents per bushel, one-half of which only was applicable to inspection, and the other half was applied to increasing the productivity of the oyster beds of the State. It thus showed upon its face that it was in fact, to the extent of one-half the charge, a revenue measure, and that the whole charge was for that reason both unreasonable and illegel. *In that case* therefore, we were warranted in holding that the Court should judge of the rea-

sonableness of that charge, but the language may be con-
ceded to be too broad when applied to a case like the pres-
ent where the reasonableness of the tax as *to the amount
merely,* is involved.

·: In *Turner* v. *Maryland,* 107 U. S. 38, JUSTICE BLATCH-
FORD, following the suggestion of JUSTICE BRADLEY, in
*Neilson* v. *Garza,* 2 Woods, 87, said: "It may be doubtful
whether it is not exclusively the province of Congress, and
not at all that of a Court, to decide whether a charge or
duty under an inspection law is, or is not, excessive," but
the Court did not determine the doubt.

In *Patapsco Guano Co.* v. *Board of Agriculture, supra,* the
Court quotes at length from *Neilson* v. *Garza, supra,* in
which JUSTICE BRADLEY said, "it seems to me that Congress
is the proper tribunal to decide the question whether a
charge or duty is or is not excessive * * *. If therefore the
law is really an inspection law the duty must stand until
Congress shall see fit to alter it," and thus he, apparently,
adopts JUSTICE BRADLEY'S view, though he had just pre-
viously said:

·: "It does not appear to us, that evidence tending to show
that money collected from this source was applied to other
than the purposes for which it was received should be entered
into on this inquiry into the validity of this act. If the
receipts are found to average largely more than enough to
pay the expenses, the presumption would be that the legis-
lature would moderate the charge. But treating the ques-
tion whether twenty-five cents per ton was shown to be so
excessive as to demonstrate a purpose other than that which
the law declared, as a judicial question, we are satisfied
that comparing the receipts from this charge with the neces-
sary expenses such as cost of analyses, salaries of inspec-
tors, cost of tags, express charges, *miscellaneous expenses of
the department in this connection, and so forth,* we cannot
conclude that the charge is so seriously in excess of what
is necessary for the objects designed to be effected as to

*justify the imputation of bad faith* and change the character of the act."

In *New Mexico* v. *Denver and Rio Grande R. R. Co.,* *supra,* Justice Day flatly says "the law being otherwise valid, the amount of the inspection fee is not a judicial question. It rests with the legislature to fix the amount, and it can only present a valid objection when it is shown that it is so *unreasonable and disproportionate to the services rendered as to attack the good faith of the law."*

It would seem from these citations that this matter is still in an atmosphere of uncertainty, i. e., whether the Courts may consider the reasonableness of the charge; whether it must stand until the presumption that the *legislature will moderate the charge* is disappointed, or whether it must stand until *Congress shall see fit to alter it.*

If the question is not a judicial question, there is no need of prolonging the consideration of this branch of the case, since the charge must stand until it is altered, either by the legislature or by Congress.

If we follow the example of Chief Justice Fuller in *Patapsco Guano Co.* v. *Board of Agriculture, supra,* and treat it as a judicial question, we can not conclude that the charge is so seriously in excess of what is necessary for the objects designed to be effected, as to justify the imputation of bad faith, and change the character of the act.

Section 69 is not an independent, isolated enactment, but a component part of a comprehensive system of law embodied in Article 72 of the Code of Public General Laws, title "Oysters," and containing 82 sections. Each section, therefore, must be read in connection with, and construed in reference to, all other sections. *State* v. *Popp,* 45 Md. 438. Even a casual examination of that article shows that an elaborate system of inspection runs through the whole law; that its enforcement is an inseparable part of the duty of the State Fishery Force, and that the expense of such inspection is a component part of all the expenses of the State Fishery Force.

In addition to the twenty special inspectors provided for
by section 69, section 68 provides for sixteen general meas-
urers and inspectors for certain designated places, to be
appointed by the Governor.  Oysters are sold not only at
the packing houses throughout the State, but also upon the
various waters of the State, to what are called "buy boats,"
and often as seed oysters for transportation beyond the State.
To such buyers, the young and unmerchantable oysters are
as desirable, if not more so, than the merchantable oysters,
and the State Fishery Force is required to see to the inspec-
tion of oysters sold to "buy boats" as well as those sold at
the packing houses.

Sections 7 to 14, inclusive, relate to the culling out of
small oysters, and require all measurers and inspectors, and
all other officers of the State Fishery Force to supervise the
operation of the whole article, and diligently to aid in the
enforcement of all its provisions.  Culling can only be
enforced by inspection.  Without it, the young oysters neces-
sary for the preservation of the future food supply afforded
by the oyster beds of the State, must soon be destroyed, and
the people of the State will be deprived of this inestimable
provision of nature, and the thousands who are engaged in
that industry will be deprived of a valuable occupation.  It
is impossible to estimate accurately, in advance, the cost
of this necessary inspection.  In one season the charge
imposed may produce a surplus, while the next season may
result in a deficiency which will absorb the surplus of the
preceding season or seasons.

But enough has been said to show that the expense of
inspection mentioned in section 69 can not be separated
from the wider inspection provided by other sections, or
from the general expenses of the State Fishery Force which
is charged with the whole duty of inspection, and if the
question can be regarded as a judicial one, we have no
hesitation in holding that the charge imposed is not exces-
sive for the purposes of inspection.  The fact that the pro-

ceeds of this charge go into the general oyster fund can not affect the validity of the law. In *State* v. *Applegarth,* 81 Md. 304, JUDGE BOYD said, "if the State has the right to impose the license tax, as we hold it has, it can certainly determine what shall be done with the money, as long as no unlawful use is made of it.". And the same was held in *Patapsco Guano Co.* v. *Board of Agriculture, supra,* in the passage already cited from that decision.

3. The contention that the charge is a direct tax upon property and for that reason repugnant to Article 15 of our Bill of Rights can not be sustained.

In *2nd Cooley on Taxation,* p. 1148, it is said: "Inspection fees are not *taxes,* but are to be referred to the police power." An inspection charge laid in the honest exercise of the police power, is essentially a charge laid "with a political view for the good government and benefit of the community," and is within the very terms of Article 15 of the Bill of Rights. The text of JUDGE COOLEY is supported by the adjudged cases. *Charlton* v. *Rogers, 2nd McCord,* 495; *O'Mally* v. *Freeport,* 96 Pa. St. 24; *Western Union Tel. Co.* v. *Phil.,* 148 Pa. St. 117.

The claim of the appellants to set off, or recoup, against the amount claimed by the State in this case, the excess payment made by them in the former case, can not be allowed, not being provided for by any statute. To allow such a claim would infringe upon the immunity of the State from suit in its own Courts. "It must be presented to another department of the government, the legislature." *State* v. *B. & O. R. R.,* 34 Md. 374.

For the reasons stated the decree of the learned judge of the Circuit Court will be affirmed.

> *Decree affirmed, the appellants to pay the costs above and below.*