[No. 25448. *En Banc.* July 9, 1935.]

BOOTH FISHERIES CORPORATION *et al., Appellants,* v. OTTO CASE, *as State Treasurer, Respondent.*[1]

[1]Reported in 47 P. (2d) 834.

*E. W. Anderson,* for appellants.

*The Attorney General* and *George Downer, Assistant,* for respondent.

BLAKE, J.—This action involves the construction of chapter 162, Laws of 1933, p. 591, entitled:

"An Act relating to fisheries and food fish, providing for an excise tax and poundage fee thereon, creating a lien on canneries, packing plants, scows, boats and their fishing equipment for such taxes and fees, amending . . . section 5704a of Remington's Compiled Statutes of Washington, 1927 Supplement . . ."

The act consists of three sections. The first section (Rem. 1934 Sup., § 5704a [P. C. § 2460-2]) contains a schedule of license fees to be paid. The first portion of the section relates to license fees to be paid by fishermen using various kinds of gear. The second portion is a schedule of poundage fees to be paid by a

" . . . canner, receiver, buyer, or wholesaler of salmon, shad or sturgeon . . . caught in the Columbia river district or the waters of the Columbia river over which the State of Washington has jurisdiction . . ."

The third portion of the section contains a schedule of fees to be paid by persons engaged in packing and canning salmon in the districts of Puget Sound, Willapa Harbor and Grays Harbor. Following that, the section continues:

"There shall also be paid to the treasurer of the State of Washington by every person, firm or corporation, operating within the aforesaid districts as a receiver, buyer, or wholesaler of salmon, the sum of six

cents (6¢) on each Puget Sound spring salmon; four-fifths cent (⅘¢) on each dog or chum salmon; three-fourths cent (¾¢) on each pink or humpback salmon; one and one-half cents (1½¢) on each silver salmon; two cents (2¢) on each sockeye salmon; and four and one-third cents (4⅓¢) on each steelhead salmon received or purchased for purposes other than canning by such receiver, buyer or wholesaler.

"It is the intention of this act that the poundage fee herein provided for shall be collected for each and every pound of fish received or purchased by any person, firm or corporation within the state of Washington, whether for the purpose of canning or to be sold on the fresh-fish market in a frozen state or as otherwise prepared."

The second section of the act (Rem. 1934 Sup., § 5704a-1 [P. C. § 2460-2a]) declares the purpose of the act to be to require every person taking salmon or food fish from the territorial waters of the state, or *from the waters of the Pacific ocean off the western territorial limits of the state,* to pay the *catch tax* imposed by the act.

The third section of the act declares an emergency, and provides that the act shall take effect immediately.

The plaintiffs are engaged in buying salmon and other food fish from fishermen and thereafter selling them at wholesale. They allege that they buy at Seattle and at three different points on the Pacific ocean within the territorial limits of the state. They allege that they buy fish caught in the Pacific ocean, both within and beyond the territorial limits of the state; that the fish caught without the territorial limits of the state may be readily segregated from those caught within; that the defendant, who is state treasurer, will, unless enjoined by the court, collect from plaintiffs the tax prescribed in the schedule contained in the above quoted portion of the act upon fish caught in the Pacific ocean beyond the territorial limits of the state. Demurrer to

the complaint was sustained. Plaintiffs electing to stand on the complaint, judgment of dismissal was entered, from which plaintiffs appeal.

The problem presented is to be solved by the character of the tax sought to be levied. If it is a "catch" or "severance" tax, it is not collectible on fish caught outside of the territorial limits of the state, if, in fact, they can be, as alleged in the complaint, readily segregated from those caught within the territorial limits. For the state has no power to levy an impost on imports, or to levy a tax on interstate or foreign commerce beyond what is necessary to defray costs of inspection. Constitution of the United States, article I, §§ 8, 10; *Foote & Co. v. Stanley,* 232 U. S. 494, 34 S. Ct. 377; *Foote & Co. v. Stanley,* 117 Md. 335, 82 Atl. 380; *Foote & Co. v. Clagett,* 116 Md. 228, 81 Atl. 511.

That fish caught in the Pacific ocean beyond the territorial limits of the state are imports, when brought into the state, is not open to question. *Gulf Fisheries Co. v. Darrouzet,* 17 Fed. (2d) 374. See, also, *Gulf Fisheries Co. v. MacInerney,* 276 U. S. 124, 48 S. Ct. 227. So long as the imported article does not become commingled with the mass of property in the state, it is exempt from taxation by the state. *Brown v. Maryland,* 25 U. S. 266. It loses this exemption only when sold, or when it is taken from the original package and exposed for sale. *Sonneborn Bros. v. Cureton,* 262 U. S. 506, 43 S. Ct. 643.

Respondent contends, however, that the tax contemplated by the portion of § 1 which we have quoted is an occupation tax, and not a levy upon imports. Taken alone, the language quoted might be susceptible of such construction. But to so construe it would necessitate reading § 2 out of the act. That section, it is to be remembered, defines the imposition as a "catch

tax,'' and purports to levy it on fish caught in the Pacific ocean beyond the territorial limits of the state. This, under the authorities cited, the state has not the power to do. Respondent, recognizing this, invites us to ignore § 2 entirely. If this be done, he urges that the quoted portion of § 1 could and should be construed as an occupation tax upon such dealers in salmon as the plaintiffs.

To follow this suggestion, however, would do violence to the primary rule of statutory construction, namely, to so construe the act as to give effect to each and every part of it. *State ex rel. Baisden v. Preston,* 151 Wash. 175, 275 Pac. 81. Only when portions of an act are so inconsistent with each other that to give effect to one renders the other nugatory is the court justified in saying which shall stand and which shall fall. *Mills v. Thurston County,* 16 Wash. 378, 47 Pac. 759. Reading the quoted portions of § 1 and § 2 together, it is clear to us that the levy contemplated is a "catch tax." It is laid on salmon landed, not upon salmon sold. See *Gulf Fisheries Co. v. MacInerney, supra.*

Giving the sections their full force, under the cases heretofore cited, the tax cannot be collected upon salmon caught outside the territorial limits of the state, which have not become commingled with the mass of property within the state, except upon the theory that it is a reasonable imposition as an inspection fee. *Gulf Fisheries Co. v. Darrouzet, supra.* We do not understand respondent to contend that the tax is sustainable on that theory. If he does, an issue of fact is presented. See *Foote & Co. v. Stanley,* 232 U. S. 494, 34 S. Ct. 377.

Since it is alleged in the complaint that respondent threatens to levy the tax on salmon caught beyond the territorial limits of the state before they become a

part of the mass of property within the state, and that such salmon are readily segregable from those caught within the state, an issue of fact is presented, which calls for answer and trial upon the merits. See *Gulf Fisheries Co. v. MacInerney, supra; Gulf Fisheries Co. v. Darrouzet, supra.*

Judgment reversed.

MILLARD, C. J., MAIN, MITCHELL, STEINERT, and GERAGHTY, JJ., concur.

BEALS, J. (dissenting)—Section 2, chapter 162, Laws of 1933, p. 596, referred to in the majority opinion, reads as follows:

"The purpose of this provision is to insure that any person taking any of the salmon or other food or shell-fish from the waters of the state of Washington or those over which it has jurisdiction, or taking any salmon or other food fish from the waters of the Pacific ocean off the western territorial limits of the state of Washington, shall pay to the state the catch tax by this act provided." Rem. 1934 Sup., § 5704a-1 [P. C. § 2460-2a].

In my opinion, this section is so utterly at variance with the remainder of the act that, in so far as the question here presented is concerned, it should be disregarded.

The majority are, of course, correct in stating that, if the tax here in question is a "catch" or "severance" tax, it cannot be levied on fish caught outside of the territorial limits of the state. It is also true that the act, being a revenue measure, should be upheld, if possible.

The law, before its amendment in 1933, provided for the payment of certain license fees and for a "poundage tax," the exaction being several times referred to by the term quoted. By the 1933 statute, three new provisions were inserted, upon which this action is

based. The first requires (in addition to license and other fees provided for by the previous act) the payment of a tax upon each case of salmon "received, purchased for canning, or canned" within certain specified districts. The second requires the payment of a tax on each salmon "received or purchased for purposes other than canning" by a buyer or wholesaler within the specified territory. These taxes are referred to in the act as poundage fees, although they are not strictly of that class, as the same tax is due upon each fish, irrespective of its weight. The paragraph stating the intention of the act reads as follows:

"It is the intention of this act that the poundage fee herein provided for shall be collected for each and every pound of fish received or purchased by any person, firm or corporation within the state of Washington, whether for the purpose of canning or to be sold on the fresh-fish market in a frozen state or as otherwise prepared."

The reference to the exaction as a poundage tax was correct as that phrase was used in the earlier statute, but is incorrect as referring to the act of 1933. This error, however, does not render the tax invalid, if it be otherwise lawful. The act is complete in itself, and, it seems to me clear, is valid, unless it be rendered void by § 2 thereof, above quoted, which section was incorporated into the 1933 act manifestly by inadvertence, having been taken from § 1, chapter 121, Laws of 1931, p. 368 (Rem. Rev. Stat., § 5704), which act levied a "catch tax" upon fish caught, requiring that the tax be paid by the person taking the fish from the water. Section 2 was appropriate to the act of which it was originally a part, but it is entirely inappropriate to the statute now under consideration.

For the following reasons, it is evident that the act of 1933 does not purport to levy a catch tax: First, the tax is not payable by the person who catches the

fish, but, on the other hand, is payable only by the canner or purchaser; second, a different tax is paid by one canning fish than is required of a dealer, the tax in the former case being based on the number of cases, while dealers pay the tax upon each fish purchased; third, the tax is payable only by persons operating as dealers or canners in this state, and does not purport to cover fish caught within the state but disposed of elsewhere.

Section 2, *supra* (Rem. 1934 Sup., § 5704a-1 [P. C. § 2460-2a]), simply declares the purpose of "this provision," (which term refers to nothing in particular) and, in my opinion, the section should simply be disregarded, as referring to no part of the act providing for the levy and payment of the tax and manifestly a legislative inadvertence, which should not be held to defeat the purpose of the legislature to levy an entirely proper and constitutional exaction.

The rule is well stated in 59 C. J. 948, § 568:

"As the intention of the legislature, embodied in a statute, is the law, the fundamental rule of construction, to which all other rules are subordinate, is that the court shall, by all aids available, ascertain and give effect, unless it is in conflict with constitutional provisions, or is inconsistent with the organic law of the state, to the intention or purpose of the legislature as expressed in the statute."

The carrying over of such a section of a prior statute, which was appropriate when first enacted, into a later revenue measure, in which it is utterly out of place and, indeed, meaningless, should not be held to defeat the later enactment. It should be judicially eliminated, and effect given to the intent of the legislature. It is the duty of the courts to carry out the legislative purpose when it is possible to do so, and sentences evidently meaningless should be rejected and the law interpreted so as to effect the legislative

intent. *Barber v. DeFord,* 169 Iowa 692, 150 N. W. 86; 59 C. J. 999, § 596. In carrying out this primary intent of the legislature, the court is, in proper cases, dutybound to eliminate or correct errors and to reject words when necessary to properly interpret the law to effect the purpose of the legislature. *Graves v. McConnell,* 162 Ark. 167, 257 S. W. 1041.

The tax here in question is neither a poundage tax nor a catch tax. It is, on the contrary, an excise tax based upon the number of fish, on the one hand, received or purchased, or, on the other hand, canned. It is levied on the privilege of engaging in the business of buying and selling, or canning, fish. Such an excise is properly based upon the number of fish received, purchased or canned. In *Barataria Canning Co. v. State,* 101 Miss. 890, 58 So. 769, a tax of three cents per barrel, "laid upon all oysters canned and packed in, and all oysters shipped raw in or from this state," was upheld as a tax upon the privilege of doing business.

The case of *Foote & Co. v. Stanley,* 232 U. S. 494, 34 S. Ct. 377, and *Foote & Co. v. Clagett,* 116 Md. 228, 81 Atl. 511, cited by the majority, are clearly distinguishable. The first case involved a levy of an inspection fee, which was held void because excessive, while in the second, one-half of the tax was levied directly on the importer, and was for this reason clearly a burden upon interstate commerce. The act here in question levies no tax on one who catches fish without the state and brings them within its borders. The excise attaches only when some person within this state, engaged in business as a canner or dealer, purchases fish.

Section 2 of the act, *supra,* also refers to the taking of shell-fish, upon which, under the statute of 1933, no tax is levied—another evidence of the complete inap-

plicability of the section to the rest of the act. Of course, under this section no tax can be demanded upon the taking of fish from the waters of the Pacific ocean, nor, for that matter, from any other waters. The section establishes no tax, but merely purports to declare a legislative purpose. Considering the section in the light of its background, in my opinion it should be held so utterly inappropriate to the remainder of the statute, which is complete in itself and is a valid taxation statute, that the section should be entirely disregarded.

I accordingly dissent from the conclusion reached by the majority.

TOLMAN and HOLCOMB, JJ., concur with BEALS, J.

