HANSON *v.* HODGES.

Opinion delivered October 13, 1913.

1. INITIATIVE AND REFERENDUM—REFERENDUM—LEGISLATIVE ACTS.—Under Amendment No. 10 to the Constitution of Arkansas, all acts of the Legislature are subject to the Referendum, except such laws as are necessary for the immediate preservation of the public peace, health and safety. (Page 486.)

2. STATUTES—ADOPTED CONSTRUCTIONS.—When a State adopts the laws of another State, it will be held to have adopted previous constructions of such law by the latter State.  (Page 489.)

3. CONSTITUTIONAL LAW—INITIATIVE AND REFERENDUM—EMERGENCY—LEGISLATIVE QUESTION.—It is a question exclusively for legislative determination, whether a statute is necessary for the immediate preservation of the public peace, health or safety.  (Page 490.)

4. CONSTITUTIONAL LAW—REFERENDUM—EMERGENCY.—The Legislature must expressly declare the existence of an emergency so as to exclude the Referendum under Amendment No. 10, to the Constiution, although it is not essential that the declaration of the emergency be in the exact words of the exception in the amendment, other words of similar import unmistakably showing such intention, being sufficient.  (Page 490.)

5. CONSTITUTIONAL LAW—REFERENDUM—DECLARATION OF AN EMERGENCY.—The act of February 17, 1913, to regulate the issuance of liquor license, which provides that "this act being necessary for the public peace, health and safety, shall take effect and be in force from and after December 31, 1913," uses substantially the language of the emergency clause in the Tenth Amendment to the Constitution; and by the words used the Legislature declared an emergency and took the act out of the operation of the Referendum.  (Page 492.)

6. STATUTES—APPROVAL BY GOVERNOR—WHEN OPERATIVE.—The act of February 17, 1913, p. 180, with the emergency clause that it "take effect and be in force from and after December 31, 1913," became a law when it was approved by the Governor, although its provisions were not enforceable until after December 31, 1913.  (Page 492.)

7. CONSTITUTIONAL LAW — REFERENDUM — EMERGENCY—"IMMEDIATE."—Amendment No. 10 to the Constitution confers power upon the Legislature to pass laws for the "immediate" preservation of the public peace, health or safety, without reference to the people under the Referendum.  *Held,* the word "immediate" means and applies to those laws that should take effect in order to conserve the purpose of protecting the public, before the people under the provisions of the amendment would have time to vote upon them.  (Page 492.)

8. CONSTITUTIONAL LAW—INITIATIVE AND REFERENDUM AMENDMENT—"IMMEDIATE."—Amendment No. 10 to the Constitution does not require that laws, which the Legislature determines and declares necessary for the immediate preservation of the public peace, health or safety shall be put into effect immediately, and a law will not be held to be unconstitutional because the Legislature, acting upon the facts before them, in their judgment and discretion, deemed it wise to postpone the time for the law to take effect until some future date.  (Page 492.)

Appeal from Pulaski Circuit Court, Second Division; *Guy Fulk,* Judge; affirmed.

STATEMENT BY THE COURT.

This is a mandamus proceeding to compel the Secretary of State to accept and file a petition for a referendum of an act entitled "An Act to Regulate the Issuance of Liquor License in Arkansas," approved February 17, 1913.

The petition therefor recited that petitioners are residents of the State, and were such on January 1, 1913, and were then and are now duly qualified electors of the State of Arkansas, in the county of Pulaski.

The petition further recited "That at the session of the General Assembly of the State of Arkansas, held in the year 1913, an act entitled as stated above was passed and was signed and approved by the Governor on February 17, 1913, a copy of which act was attached to the petition marked exhibit 'A' and made part thereof.

"That by the terms of said act the sale of intoxicating liquors in cities and counties where the vote had been in favor of such sale was and is made dependent upon the filing of a petition to be signed by a majority of the adult white inhabitants living within the corporate limits of any incorporated town or city, in manner and form as provided in said act; but that by the seventh and last section of said act it was and is provided as follows, towit: 'This act being necessary for the public peace, health and safety, shall take effect and be in force from and after December 31, 1913.'

"That being advised and believing the fact to be that the said act could be the subject of referendum under the amendment to the Constitution of the State of Arkansas relating to the Initiative and Referendum, being known as Amendment No. 10, and under the act of the General Assembly of the State of Arkansas, being 'An act to provide for carrying into effect the initiative and referendum powers reserved by the people in Amendment No. 10 to the Constitution of the State of Arkansas on general county and municipal legislation, to regulate elections

thereunder and to punish violations of this act,' approved June 30, 1911, petitioners, together with 12,155 other citizens and electors of the State of Arkansas, after said February 17, 1913, and within less than ninety days after the final adjournment of the said General Assembly of the State of Arkansas, caused to be filed with the defendant, Earle W. Hodges, as Secretary of State of said State of Arkansas, a petition or petitions prepared and circulated as required by said amendment and act, ordering and asking that said act be referred under the said referendum clause of Amendment No. 10 to the people of the State of Arkansas, either for adoption or rejection, as the case might be, at the general election to be held on the second Monday of September, 1914, said petitions being in matter and form as shown by exhibit 'B' thereto attached and made part thereof.

"That the whole number of votes cast for the office of Governor of the State of Arkansas at the regular election last preceding the filing of said petitions for the referendum of said enactment aggregated 169,649 votes, and under the said tenth amendment the number of citizens and electors required to obtain said referendum was 8,483, and that the number of citizens and electors who have signed said petitions exceeds the required number 3,675.

"That notwithstanding said petitions are in the proper form and contain more than sufficient signatures as required by law, and notwithstanding that the said act contains no emergency clause such as is required by the provisions of the said tenth amendment, and is otherwise subject to the referendum aforesaid, yet the said defendant, as such Secretary of State, on the 31st day of May, 1913, refused and still doth refuse to accept and file said petitions, or either of them, as required by law, to the end that the said act might be properly submitted for the referendum under the said provision of the tenth amendment to the Constitution and act of the General Assembly aforesaid. And that the petitioners are therefore remediless except by the means of a writ of man-

damus to be granted by this honorable court, compelling the said defendant, as such Secretary of State, to accept and file the said petitions for a referendum of this act, as contemplated by the law in such cases made and provided.

"Wherefore, petitioners pray for a writ of mandamus directed to the said Earle W. Hodges, as Secretary of State of the State of Arkansas, commanding and requiring him, as such Secretary of State, to accept and file said petition as required by law, to the end that a referendum be had as to said act, as contemplated by law, and for costs and other proper relief."

Said petition was duly sworn to and was filed in the Pulaski Circuit Court, Second Division, on the 31st day of May, 1913, and proper notice of the application for mandamus was duly served on the Secretary of State; and in addition to said notice there was duly served upon him on said day an alternative writ of mandamus. Attached to the petition was a copy of the act referred to and a copy of the form of a properly prepared petition for referendum as presented to the Secretary of State. The act in question is Act No. 59 of the Acts of 1913 at page 180.

Respondent, Secretary of State, demurred to the petition for mandamus for the reason that it did not state facts sufficient to constitute a cause of action.

The sole issue presented on the demurrer to the petition, and the sole question now presented for our decision is whether or not said act was subject to referendum. The lower court held that it was not subject to the referendum, and on this issue sustained the demurrer and dismissed the petition. Appellants have appealed from that action of the court.

In the record is a written stipulation of counsel to the effect that it was agreed that if said act is, or was, subject to the referendum the mandamus prayed for should have been granted by the circuit court, and that it should be so ordered by this court, and if said act

by reason of the provisions of section 7 is not so subject, the judgment of the lower court should be affirmed.

*W. L. & D. D. Terry* and *Morris M. & Louis M. Cohn,* for appellants.

1. The legislative declaration is not conclusive upon the courts. 76 Ark. 202; 81 *Id.* 562; 83 *Id.* 54; 118 Ind. 502; 21 N. E. 39; 103 U. S. 637. The power of the Legislature is not *unlimited.* 76 Ark. 202; 74 Pac. 720; 88 *Id.* 522; 145 S. W. 199.

2. The Legislature has not determined that this law was necessary for the immediate preservation of the public peace, health or safety. The language used is the criterion, and the words used are given the meaning they ordinarily bear. The law is self-executing. 76 Ark. 303; 75 *Id.* 542; 60 *Id.* 343; 59 *Id.* 237; 66 *Id.* 361; 138 Mo. 347; 103 Ark. 48.

*Wm. L. Moose,* Attorney General, and *Jno. P. Streepey,* Assistant, for appellee.

1. No act will be considered necessary for the immediate preservation of the public peace, etc., except such acts as the Legislature find to be so, and when the Legislature does so find it is conclusive. 74 Pac. 710; 88 *Id.* 522; 100 *Id.* 559; 103 Ark. 54.

2. It was the intention of the Legislature to remove the act from the operation of Amendment No. 10, and the declaration, while not in the best words that might have been employed, expresses unmistakably the legislative intent. The courts always endeavor to ascertain from the language used the intent of the Legislature and what it intended to accomplish.

*Coleman & Gantt, Sam Frauenthal* and *J. V. Bourland, amici curiae.*

1. The *immediate* necessity alone can deprive the people of their voice in accepting or rejecting the act. 7 Ind. 13. Either the exact words of the exception * * * must be used, or their necessary equivalent. Nothing can be taken by implication but must be expressly de-

clared. 133 Pac. 1145; 88 Pac. 522; 31 Ark. 701; 103 Ark. 53; 36 Cyc. 1194; 18 L. R. A. (N. S.) 664.

2. The Legislature must determine the necessity of the law; if not, the courts can not do so. The Legislature did not do so. 74 Pac. 710; 85 N. W. 605; 88 Pac. 522; 100 *Id*. 559; Cooley, Const. Lim. 89; 36 Cyc. 1194.

SMITH, J., (after stating the facts). The provisions of Amendment No. 10, the Initiative and Referendum Amendmenmt, are as follows:

"Section 1. The legislative powers of this State shall be vested in a General Assembly, which shall consist of the Senate and House of Representatives, but the people of each municipality, each county and of the State, reserve to themselves power to propose laws and amendments to the Constitution, and to enact or reject the same at the polls as independent of the legislative assembly, and also reserve power at their own option to approve or reject at the polls any act of the legislative assembly. The first power reserved by the people is the Initiative, and not more than 8 per cent of the legal voters shall be required to propose any measure by such petition, and every such petition shall include the full text of the measure so proposed. Initiative petitions shall be filed with the Secretary of State not less than four months before the election at which they are to be voted upon.

"The second power is a Referendum, and it may be ordered (except as to laws necessary for the immediate preservation of the public peace, health or safety), either by the petition signed by 5 per cent of the legal voters or by the legislative assembly as other bills are enacted. Referendum petitions shall be filed with the Secretary of State not more than ninety days after the final adjournment of the session of the legislative assembly which passed the bill on which the referendum is demanded. The veto power of the Governor shall not extend to measures referred to the people. All elections on measures referred to the people of the State shall be had at the biennial regular general elections, except when

the legislative assembly shall order a special election. Any measure referred to the people shall take effect and become a law when it is approved by a majority of the votes cast thereon and not otherwise. The style of all bills shall be, 'Be it enacted by the people of the State of Arkansas.' This section shall not be construed to deprive any member of the legislative assembly of the right to introduce any measure. The whole number of votes cast for the office of Governor at the regular election last preceding the filing of any petition for the Initiative or for the Referendum shall be the basis on which the number of legal votes necessary to sign such petition shall be counted. Petitions and orders for the Initiative and for the Referendum shall be filed with the Secretary of State, and in submitting the same to the people he and all other officers shall be guided by the general laws and the acts submitting this amendment until legislation shall be specially provided therefor.''

It is apparent that all acts of the Legislature are subject to the referendum except such laws as are necessary for the immediate preservation of the public peace, health or safety, and to determine whether or not the act in question is subject to the referendum it is necessary for us to consider and decide two questions: First, is the determination that an emergency exists for putting an act immediately into effect a legislative or a judicial question? Second, if it is a legislative question, has the Legislature properly evidenced its finding that an emergency existed and has this finding been given that expression in the act, which excludes it from the referendum?

As is well known, this amendment is substantially a copy of the Oregon amendment, and shortly after its adoption there it became necessary for the Supreme Court of that State to determine the first question, which is now before us, and in an opinion by Justice Bean of that court the subject was exhaustively discussed, and among other things he said:

"This brings us to the question as to whether the

legislative declaration that the Portland charter was necessary for the preservation of the public peace, health and safety is conclusive on the courts. Under the initiative and referendum amendment, laws 'necessary for the immediate preservation of the public peace, health or safety' are excepted from its operation. As to them, the action of the legislative and the executive departments is conclusive and final, so far as their enactment is concerned. No power is left to the people to approve or disapprove them. They are not subject to the referendum amendment, and as to them the powers of the other departments of the government derived from the Constitution are unaffected. The legislative assembly, may, in its discretion, put them into operation through an emergency clause, as provided in section 23, article 4, of the Constitution, or it may allow them to become laws without an emergency clause; the necessity or expediency of either course being a matter for its exclusive determination. As to all other laws the amendment applies, and they can not be made to go into operation for ninety days after the adjournment of the session at which they were adopted, or until after approval by the people, if the Referendum is invoked. Section 28, article 4, of the Constitution, giving the legislative assembly power to put any law into force upon approval by declaring an emergency, has been modified by the amendment of 1902, so as to exclude from the power to declare an emergency all laws except those necessary for the immediate preservation of the public peace, health or safety. So far, all are agreed. But the vital question is, what tribunal is to determine whether a law does not fall under this classification? Are the judgment and findings of the legislative assembly conclusive, or are they subject to review by the courts? The inquiry is much simplified by bearing in mind that the exception in the constitutional amendment is not confined to such laws as the legislative assembly may legally enact by virtue of the police power of the State, nor to those alone that may affect the public peace, health, or safety. The police

power is limited to the imposition of restraints and burdens on persons and property, in order to secure the general comfort, health and prosperity of the State. Tiedeman, Lim. Pol. Power, 1. But the language of the constitutional amendment is broader, and includes all laws, of whatsoever kind, necessary for the immediate preservation of the public peace, health or safety, whether they impose restraints on persons and property, or come strictly within the police powers, or not. The laws excepted from the operation of the amendment do not depend alone upon their character, but upon the necessity for their enactment in order to accomplish certain purposes. As to such laws, the amendment of 1902 does not in any way abridge or restrict the power of the Legislature, which, by the insertion of a proper emergency clause, may unquestionably cause them to go into effect upon approval by the Governor. As the Legislature may exercise this power when a measure is in fact necessary for the purposes stated, and as the amendment does not declare what shall be deemed laws of the character indicated, who is to decide whether a specific act may or may not be necessary for the purpose? Most unquestionably, those who make the laws are required, in the process of their enactment, to pass upon all questions of expediency and necessity connected therewith, and must therefore determine whether a given law is necessary for the preservation of the public peace, health and safety. It has always been the rule, and is now everywhere understood, that the judgment of the legislative and executive departments as to the wisdom, expediency or necessity of any given law is conclusive on the courts, and can not be reviewed or called in question by them. It is the duty of the courts, after a law has been enacted, to determine in a proper proceeding whether it conflicts with a fundamental law, and to construe and interpret it so as to ascertain the rights of the parties litigant. The powers of the courts do not extend to the mere question of expediency or necessity, but, as said by Mr. Justice Brewer, 'they are wrought out and fought out

in the Legislature and before the people. Here the single question is one of power. We make no laws. We change no Constitutions. We inaugurate no policy. When the Legislature enacts a law, the only question which we can decide is whether the limitations of the Constitution have been infringed upon.' Prohibitory. Am. Cas. 24 Kan. 700-706. The amendment excepts such laws as may be necessary for a certain purpose. The existence of such necessity is therefore a question of fact, and the authority to determine such fact must rest somewhere. The Constitution does not confer it upon any tribunal. It must therefore necessarily reside with that department of the government which is called upon to exercise the power. It is a question of which the Legislature alone must be the judge, and when it decides the fact to exist, its action is final." *Kadderly* v. *City of Portland,* 74 Pac. 710.

The decision is of special force because it was rendered on December 21, 1903, which was some years before we borrowed the amendment from the State of Oregon. In the case of *State* v. *Arkansas Brick & Mfg. Co.,* 98 Ark. 130, Special Judge NORTON, for the court, there said: "The case last cited comes with especial force, as it arose in Kentucky after her adoption of a code which was subsequently adopted by Arkansas. When one State adopts the laws of another State, it is quite generally held that constructions of the adopted law go along with it." This is an accepted rule of construction announced in many cases. *McNutt* v. *McNutt,* 78 Ark. 346.

Substantially the same question arose in this State about as soon as such question could arise. The Legislature of 1911 passed the act known as the Turner-Jacobson act, which concluded with the following words: "And this act shall take effect and be in force from and after its passage." The act imposed certain duties upon certain officers in connection with the assessment of property for taxation, the performance of which was required before the expiration of ninety days after the close of

the session. In the case of *Arkansas Tax Commission* v. *Moore*, 103 Ark. 48, which involved the right to refer this Turner-Jacobson act, the court there first determined the constitutional amendment was self-executing and then proceeded to a consideration of the question whether the exception of acts from the operation of the Referendum was a purely legislative question or not.

In discussing that question the court said: ''The constitutional provision is also a chart for legislative guidance, and leaves it in the power of the Legislature, in its discretion, to determine what laws come within the exception as necessary for the immediate preservation of the public peace, health or safety, for as to all such its power is not restricted. It was a question exclusively for legislative determination, and such determination alone could bring it within this exception and power of the Legislature to make it immediately effective and thereby remove it from the general class. of laws upon which the people reserved the right to order the Referendum. *Stevens* v. *Benson, supra; Kadderly* v. *Portland,* 74 Pac. (Ore.) 720; *Sears* v. *Multnomah County,* 88 Pac. (Ore.) 522.''

It was there further said: ''It is the business of the court to ascertain the legislative intent and determine when the act becomes operative as a law. If the Legislature had used the words of the exception in the amendment and said that the act was necessary for the immediate preservation of the public peace, health or safety, and should go into effect from and after its passage, there could have been no question as to the time of its becoming operative, or if it had used any other words of similar import unmistakably showing such an intention no doubt would have arisen; but it failed to do so, making necessary construction by the court.''

It appears therefore from the decision in the *Tax Commission* case to be already settled that the existence of the emergency is exclusively a question for legislative determination. To the same effect, see *Oklahoma City* v. *Shields*, 100 Pac. 559.

This principle has long been recognized by this court, and controlled all those decisions arising under section 23 of article 5 of the Constitution. This section provides that in all cases where a general law can be made applicable, no special law shall be enacted, yet in each case this court has held that whether a special act is necessary is a matter within the discretion of the Legislature. *Boyd* v. *Bryant*, 35 Ark. 73; *Davis* v. *Gaines*, 48 Ark. 371; *State* v. *Sloan*, 66 Ark. 579; *Carson* v. *Levee District*, 59 Ark. 513; *Powell* v. *Durden*, 61 Ark. 21; *St. Louis S. W. Ry. Co.* v. *Grayson*, 72 Ark. 119; *State* v. *Moore*, 76 Ark. 197.

"The judiciary can only arrest the execution of a statute when in conflict with the Constitution. It can not run a race of opinions upon points of right, reason and expediency with the law-making power." Cooley's Const. Lim. (7 ed.) 236; *State* v. *Moore*, 76 Ark. 200.

The court held the Turner-Jacobson act subject to the Referendum in the *Tax Commission* case, *supra*, for the reason that "the concluding provision of the revenue act and the others fixing dates for the performance of certain things before the act could become operative under the constitutional amendment unless it comes within the exception, do not manifest an intention upon the part of the Legislature to put it into effect as a law necessary for the immediate preservation of the public peace, health or safety, and were not meant for, and are not a legislative determination that the act should take effect as such, and it could not therefore take effect until ninety days after the final adjournment of the session of the Legislature at which the act was passed or after its approval by the people if the Referendum is invoked."

The point which controlled the decision in the *Tax Commission* case, *supra*, is the same proposition involved in the second question in the case now under consideration. It appears to have been decided in the *Tax Commission* case that while it was exclusively a question for legislative determination as to the existence of the emergency excluding the Referendum, yet that the existence of

this emergency must be expressly declared in the act, although it is not essential that the declaration of the emergency be in the exact words of the exception in the amendment, if it has used "any other words of similar import unmistakably showing such an intention."

Is there any uncertainty in the language which the Legislature has employed? If there is, the act is subject to the Referendum. But we think the doubt does not exist. The Legislature did not employ the formula used before the adoption of the amendment "that this act shall take effect and be in force from and after its passage, or from and after December 31, 1913," but it undertook to use substantially the language of the emergency clause of the amendment, and did employ its exact words except for the omissions of the words "immediate preservation." The use of these words would have to be declared purposeless, and the words themselves without meaning, and the Legislature to have had no intent in their employment, if it be not held that by their use the Legislature undertook to declare an emergency which should take the act from without the operation of the Referendum. The omissions of the words "immediate preservation" is said to be fatal because if its purposes can not be immediately accomplished it is subject to the Referendum. But this act, with the emergency clause, became a law when it was approved by the Governor and it was immediately a law upon his approval, although its provisions were not enforceable until after December 31, 1913.

One purpose of Amendment No. 10 was to confer upon the Legislature the power to pass laws that were necessary for the immediate preservation of the public peace, health or safety, without reference to the people under the Referendum. Immediate, in the sense of this amendment, means those laws that should take effect in order to conserve this purpose before the time when the people under the provisions of the amendment would have the opportunity to vote upon them. In other words, such laws as the Legislature deem necessary for the im-

mediate preservation of the public peace, health or safety, they may so find, and declare, and put in force at any time before the next general election. The framers of Amendment No. 10, and the people who adopted it, did not intend that laws necessary for the immediate preservation of the public peace, health or safety should wait the slow processes of the Referendum, hence the amendment provides that the Legislature could enact such laws and put them in force before the time required for the people to pass on them under the Referendum. But the amendment does not require that laws which the Legislature determines and declares necessary for the immediate preservation of the public peace, health or safety shall be put into effect immediately. In the absence of such requirement a law should not be held unconstitutional because the Legislature, acting upon the facts before them, in their judgment and discretion, deemed it wise to postpone the time for the law to take effect until some future date. The judgment of the court below is therefore affirmed.