GRAVES *v.* McCONNELL.

## Opinion delivered January 28, 1924.

1. STATUTES—CONSTRUCTION—LEGISLATIVE PURPOSE.—A  s t a t u t e
   should be construed as a whole, giving some meaning to every
   word if possible, and, in order to effectuate the intent of the
   Legislature, the court may eliminate or correct errors or reject
   certain words and substitute others, in order to reconcile
   apparent inconsistencies.

2. ANIMALS—STOCK-LAW ELECTION.—Under Special Acts 1923, No.
   534, providing for a special stock law in Howard County, but
   that it should not become effective until approved at a special
   election to be held on any date before the 1st day of August,
   1923, and in § 6 that the act should take effect 90 days after its
   passage, an election held on any date between the date of the
   Governor's approval of the act and August 1, 1923, though
   before such 90-day period, was valid.

3. ANIMALS—STOCK-LAW  ELECTION—MAJORITY  DEFINED.—Special
   Acts 1923, No. 534, § 5, providing that such act should not
   become effective until approved by a majority of the qualified
   electors of the territory affected, requires a majority only of
   those voting on the question of its adoption.

4. ANIMALS—REVIEW OF RETURNS OF STOCK-LAW ELECTION.—Under
   Crawford & Moses' Digest, § 2237, giving circuit courts power
   to issue writs of certiorari to any officer or inferior tribunal
   to correct any erroneous or void proceeding, the writ does not
   lie to review the action of the board of election commissioners
   and county judge and clerk in canvassing the returns and
   proclaiming the result of a special stock election.

5. CERTIORARI—MINISTERIAL ACT.—Certiorari will not lie to correct
   a purely ministerial act, even though the performance of the
   act involves discretion.

6. MANDAMUS—WHEN WRIT DOES NOT LIE.—Mandamus will not lie
   to correct an erroneous statement in the election commissioners'
   proclamation of the result of a special stock law election that the
   law had not become effective, where the proclamation showed on
   its face that a majority of the votes cast were in favor of
   adopting the law, which put it in full force notwithstanding
   such statement.

7. CERTIORARI—AFFIRMANCE.—A judgment correctly quashing a writ
   of certiorari must be affirmed, though the trial court gave an
   erroneous reason for affirmance.

Appeal from Howard Circuit Court; *B. E. Isbell,*
Judge; affirmed.

*W. P. Feazel,* for appellant.

1. The court erred in holding that, under § 6 of the act, no part of it went into effect until ninety days after its approval. Having the emergency clause attached, it became a valid law and effective for the purpose of holding the election from the time it was approved by the Governor. 109 Ark. 479. See § 5 of the act. On construction of statute, see 135 Ark. 462; 94 Ark. 422; 133 Ark. 491; *Summers* v. *Road Imp. Dist. 16,* 160 Ark. 371. The intent of the Legislature as to when an act shall become effective is controlling, and, when ascertained, it is the duty of the courts to give effect to it. *Miller* v. *Witcher,* 160 Ark. 479.

2. The county judge and board of election commissioners are estopped from defending on the ground that the election was held without authority. 76 Ark. 48.

3. The commissioners were ministerial officers merely, and had no discretion to take testimony as to the number of electors in the district. Their plain duty was to certify the results as shown by the returns. McCrary on Elections, § 81-5. The provision that the act should not become effective "until it has first been approved by a majority of the qualified electors residing in said district" does not mean a majority of those who actually reside in the district, but a majority of those voting on the question at the election. 45 Ark. 400; 153 Ark. 313.

4. Certiorari and mandamus the proper remedy. C. & M. Digest, § 2237; 126 Ark. 125; 153 Ark. 50; McCrary on Elections, § 331.

*J. W. Bishop,* for appellees.

1. The legislative intent was that the act as a whole should receive a majority of votes of the qualified electors residing in the district in its favor before it became operative. Sections 2, 5 and 6; 157 Ark. 186; 145 Ark. 144, 147.

2. Certiorari will not lie to correct ministerial acts. 158 Ark. 437; 157 Ark. 186; *Tilghman* v. *Russell,* 158 Ark. 593.

3. Mandamus will not lie to control the discretion of a court or judge or other functionary, but will be granted only to compel him to act when he refuses to do so. 103 Ark. 504; 26 Cyc. 159; 18 A. L. R. 233; 48 Ark. 384; 56 Ark. 113; 59 Ark. 330; 66 Ark. 579; 78 Ark. 462; 80 Ark. 337; 83 Ark. 598; 84 Ark. 394; 92 Ark. 4; 109 Ark. 491.

4. If the referendum governs, then no election could be held until ninety days after the adjournment of the Legislature. 103 Ark. 57.

WOOD, J. Act No. 534 of the Acts of 1923 provides for a special stock law in certain parts of Howard County, Arkansas, known as the "no-fence district." Sections 1, 2, 3 and 4 contain provisions as to the manner of creating the district and the duties of owners of stock with reference thereto, and the penalty for failure to comply with the provisions thereof.

Section 5 of the act, among other things, provides: "No provision of this act shall become effective until it has first been approved by a majority of the qualified electors residing in said described district, at a special election to be held and decide the question. Said election shall be called by the county judge of said county, by publishing proclamation, to be printed for four weeks in all newspapers which have a general circulation in said territory * * *. Such special election shall be held on any date before the first day of August, 1923, etc. * * *. Upon the county board of election commissioners issuing their proclamation, attested by the county judge and county clerk, that a majority of said qualified voters voted in favor of this act, then and thereupon it shall be in force and effect from date; otherwise it shall be null and void."

Section 6 provides: "That all laws and parts of laws in conflict herewith are hereby repealed, and this act, being necessary for the immediate preservation of the public peace, health and safety, shall take effect and be in force 90 days after its passage."

The county judge called the election provided for in
§ 5, fixing May 5, 1923, as the day the law should be
voted upon. The election was held on that day; and, as
shown by the certificates of the election commissioners,
there were 1,450 votes cast, 760 of the qualified electors
voting for the law and 688 voting against it. The proc-
lamation was duly issued, attested by the county judge
and the county clerk. The commissioners, upon evidence
adduced before them tending to prove there were 2,250
qualified electors residing within the district, proclaimed
that the law had not received a majority of such electors,
and therefore the law had not become effective. The
appellants, by certiorari issued out of the circuit court,
sought to have the action of the election commissioners
and the county judge reviewed, and, if they had erred,
to compel them by mandamus to proclaim that the law
had been put in effect by such election. The election
officers joined issue on the allegations of the petition for
certiorari, and, at the hearing, the trial court held that
the election called on March 19, and held on May 25,
1923, was prematurely called and prematurely held, for
the reason that what purports to be the emergency
clause attached to said act provides that the same shall
not take effect and be in force until ninety days after its
passage, and that the law was not effective for any pur-
pose until ninety days after March 21, 1923, or until
June 21, 1923, and therefore said election was called and
held before the law went into effect.

In construing a statute it is the duty of the court to
construe it as a whole and give some meaning to every
word, if possible, and, in order to effectuate the intent
of the Legislature, the court may eliminate or correct
errors in a statute, or reject certain words and substitute
others, when, by so doing, it only reconciles apparent
inconsistencies of language, and, on the whole, accom-
plishes the purpose which the Legislature had in mind
in the enactment of the law. *Garland Power Co.* v. *State
Board,* 94 Ark. 422; *Rayden* v. *Warrick,* 133 Ark. 491;

*Kindricks* v. *Machin,* 135 Ark. 460; *Summers* v. *Road Imp. Dist.,* 160 Ark. 371.

Now, the language, "such special election shall be held on any date before the first day of August, 1923," is so plain that it does not admit of any construction. The appellees contend that the only way this language can be reconciled with § 6 of the act and carry out the intention of the Legislature is to amend it so as to read as follows: "Such special election shall be held on any date (after ninety days) but before the first day of August, 1923," adding the words inclosed in the brackets. But it occurs to us that the Legislature did not intend to postpone the election to determine whether the act should become effective beyond the expiration of ninety days after the act was approved by the Governor. The act contains the emergency clause, and therefore was not subject to the referendum. *Ark. Tax Com.* v. *Moore,* 103 Ark. 48; *Hanson* v. *Hodges,* 109 Ark. 479. It was therefore clearly the intention of the Legislature that this law should become effective, so far as the holding of the election was concerned, before the expiration of ninety days after the final adjournment of the Legislature.

We think it is equally clear that the Legislature intended that the election to determine whether the act should become effective should be held before the first day of August, 1923, as the act plainly declares. The meaning of the act is simply this: The qualified electors, under the act, had the right to hold an election on any date between the time of the approval of the act by the Governor until the first day of August, 1923, to determine, by the election held in the manner prescribed by the act, whether the act should become effective, and, if the election were held and it was decided by the majority of the qualified electors residing within the district voting upon the subject that the provisions of the law should be put in force, then the remedial provisions of the act were in force, beginning at a period ninety days after the act was approved by the Governor.

The act under review here is not like the act that was under consideration in the case of *Gaster* v. *Dermott-Collins Road Dist.*, 156 Ark. 507, where we held that an act without an emergency clause does not become operative until ninety days after the adjournment of the Legislature. There the election could not be held at all until after the expiration of the ninety-day period from the adjournment of the Legislature, because there was no emergency clause. Here, there is an emergency clause, and the act takes effect, for the purpose of having the election held, after ninety days from its passage, provided the qualified electors have held an election before the first day of August, 1923, and determined by majority that the remedial provisions of the law shall become operative.

The case is controlled in this respect by the recent case of *Miller* v. *Witcher*, 160 Ark. 479. In that case, while there was no emergency clause, the act designated a fixed day when the election was to be held to determine whether the act should take effect, which day was before the expiration of ninety days for the law to become operative under the initiative and referendum of the Constitution. In that case we said: "The only way to give any effect to that part of the act providing for an election in the district is to say the Legislature intended to impose that condition before the act could be put in operation. * * * Until the expiration of the ninety-day period after the adjournment of the Legislature, the voters had the power to refer the act to the people as a whole, for approval or rejection, at the next general election." In the instant case the act was not referred to the people for approval or rejection under the initiative and referendum, and it became a law when it was approved by the Governor, authorizing the qualified electors to hold the election at the time and in the manner prescribed therein, but it was not to become operative, so far as its remedial provisions were concerned, until the election was held and a majority

of the qualified electors in the district had voted that its remedial provisions should go into operation and effect.

In *Gaster v. Dermott-Collins Road Imp. Dist.,* *supra,* inasmuch as the Legislature did not specify any time for holding the election, and since there was no emergency clause, we held that it was the intention of the Legislature that the election should not be held until some time after the expiration of the referendum period. But here the Legislature has fixed a definite time for the election and has added the emergency clause. Construing all the provisions of the act together, we are convinced that it was the design of the Legislature to have the election held before the first day of August, 1923, and, if the result of that election was in favor of putting the remedial provisions of the act in force, then these provisions became effective as soon as the ninety days expired after the approval of the act by the Governor. We conclude therefore that the election to determine whether the remedial provisions of the act should become operative was not premature.

2. Section 5 of the act provides: "No provision of this act shall become effective until it has first been approved by a majority of the qualified electors residing in said district." In *Watts* v. *Bryan,* 153 Ark. 313, an amendment to the Constitution contained the following provision: "If a majority of the qualified electors of such county shall have voted public road tax, etc. * * *." In that case we held that this language requires a majority only of those voting on the question, and not a majority of the highest number of votes cast at the election, nor a majority of all persons in the county entitled to vote. See also *Banks* v. *Austell,* 45 Ark. 400, where we gave similar language a like construction. The canvass of the returns by the commissioners of the votes cast upon the subject showed a majority for making the law effective. It follows therefore that, under the above decisions, the commissioners should have proclaimed the law in effect.

3.    Section 2237 of Crawford & Moses' Digest gives to circuit courts the power to issue writs of certiorari to any officer or board of officers, or any inferior tribunal of their respective counties, to correct any erroneous or void proceeding, and to hear and determine the same.   The appellants contend that, under this section, certiorari is the proper remedy, since the act under review provides no method for reviewing the action of the board of election commissioners and the county judge and clerk, by appeal or otherwise.   But an examination of the act will disclose that the appellants are not correct in this contention, for the authority conferred upon the board of election commissioners is simply to canvass the returns and declare the result and file a certificate of the same with the county clerk.   They issue their proclamation, attested by the county judge and county clerk, that the majority of the voters voted in favor of or against the act.   We cannot discover in any of these duties any *quasi-*judicial function.   The acts of canvassing the returns and declaring the result of the election and filing the certificate thereof and issuing the proclamation are all purely ministerial acts.   The law is well settled by numerous decisions of this court that certiorari will not lie to correct a purely ministerial act, even though the performance of the act involves discretion. *Patterson* v. *Adcock,* 157 Ark. 186, and cases there cited.   Mandamus will not lie. The election officers did not refuse to act, but only, as appellants contend, did not make the correct proclamation.   Mandamus cannot be invoked to correct an erroneous proclamation.   The proclamation, on its face, shows that a majority of the votes cast were in favor of adoption of the law, and this put the law in force, notwithstanding the erroneous statement in the proclamation that the law had not become effective.

We are not called upon here to determine what court or tribunal would have jurisdiction to determine a contest of the result of the election.   Suffice it to say, in response to the contention of the appellees, that certiorari

and mandamus are not the proper remedies to review the action of the election commissioners in canvassing the returns of the election and proclaiming the result thereof. While the trial court gave an erroneous reason for its judgment in quashing the writ, its judgment is nevertheless correct, and it therefore must be affirmed.