The Honorable Marvin Childers State Representative 608 S. Estate Drive Blytheville, AR 72315-8005
Dear Representative Childers:
I am writing in response to your request for my opinion on a question I will paraphrase as follows:
 Pursuant to provisions of A.C.A. 6-13-615, does the election to elect school board directors from single member zones require a majority of the qualified electors of the school district to approve the zoned membership or a majority of the qualified electors who actually vote in the election?
 RESPONSE
In my opinion, if the issue is put to a vote pursuant to A.C.A § 6-13-615
(Repl. 1999), a majority of the qualified electors who actually vote in the election will determine whether school district directors will serve single-member zones.
Section 6-13-615 of the Code provides in pertinent part:
 (a)(1) Qualified electors of a school district may, by petition, have placed on the ballot of any annual school election the issue to determine whether to elect the school district board of directors from single-member zones.
 (2) The petitions calling for such an issue to be placed on the ballot shall be signed by not less than ten percent (10%) of the qualified electors of the district, based upon the total number of registered voters in the district.
* * *
 (c) If a majority of the qualified electors of the school district shall vote for the election of the school district board of directors from single-member districts, the county election commission of the county in which the largest portion of the school district lies shall establish, within the school district, boundaries for the election of directors of the school board which shall have substantially equal population based on the most recent available census information and from which racial minorities may be represented on the board in proportions reflected in the district population as a whole.
(Emphases added.)
On its face, the highlighted language would appear to suggest that the operative figure both for establishing the sufficiency of the petition and for determining the election result is the number of qualified electors residing within the district. However, with respect to the election, Arkansas case law establishes beyond question that the pertinent inquiry will be whether a majority of those voting in the election supported the establishment of single-member districts. This principle was justified as follows in Vance v. Austell, 45 Ark. 400, 406-07 (1885):
 Section 3 of Article XIII., Constitution of 1874, provides that "No county seat shall be established or changed without the consent of a majority of the qualified voters of the county to be affected by such change, nor until the place at which it is proposed to establish or change such county seat, shall be fully designated." Does this language mean a majority of those persons resident in the county who possess the qualifications of electors, or merely a majority of those who actually participate in the election? Cases are to be found in the reports where the first mentioned construction has been placed upon similar language in constitutional provisions. Such are Cooke v. Gooch, 5 Heisk., Tenn., 294, afterwards followed in Bouldin v. Lockheart, 1 Lea, 195; Hawkins v. Carroll County, 50 Miss., 735. But the great weight of authority is that, "Where a statute requires a question to be decided, or an officer to be chosen by the votes of a majority of the voters of a county, this does not require that a majority of all persons in the county entitled to vote shall actually vote affirmatively, but only that the result shall be decided by the majority of the votes cast; provided always there is a fair election and an equal opportunity for all to participate. In such a case the only proper test of the number of persons entitled to vote is the result of the election as determined by the ballot-box, and the courts will not go outside of that to inquire whether there were other persons entitled to vote who did not do so. The voters of the county referred to by all such statutes are necessarily the voters who voted at the election, since the result in each case must be determined by a count of the ballots cast, and not by an inquiry as to the number not cast." McCrary on Elections, Sec. 183 and cases cited; Railway Company v. Davidson County, 1 Sneed, 692; State v. Mayer, 37 Mo., 272; St. Joseph Township v. Rogers, 16 Wall., 644. This doctrine is as old as Rex v. Foxcraft, 2 Burrows, 1017, (decided in 1760,) when Lord Mansfield observed, "Whenever electors are present and don't vote at all, they virtually acquiesce in the election made by those who do."
The supreme court has subsequently cited Austell for the above proposition on various occasions. See, e.g., Rockefeller v. Matthews,249 Ark. 341, 344-45, 459 S.W.2d 110 (1970) (holding that a plurality vote is sufficient to elect an official under Ark. Const. art. 6, § 3);Glover v. Hot Springs Kennel Club, 230 Ark. 544, 548, 551-52,323 S.W.2d 902 (1959) (holding that a statute that required "a majority of the qualified electors" to approve a franchise to conduct greyhound racing meant a majority of those voting on the issue). InGlover, the court offered the following analysis:
 It will be observed that in Section 6(A) the words are, ". . . a majority of the qualified electors of such county at a special election called for that purpose . . ."; and in Section 9(B) the words are, ". . . and any such proposition shall be carried when approved by a majority of the qualified electors of the county . . ." Do the said words in Section 6 and Section 9 — "a majority of the qualified voters of the county" — standing alone and without further qualifying or modifying words, as they do, have a fixed and definite meaning in legal parlance. The answer is, yes: the words do have a fixed and definite meaning by the decisions of this Court; and such fact is the decisive answer in this case. We have an impressive line of decisions of this Court on the point, some of them being: Vance v. Austell (1885), 45 Ark. 400; Watts v. Bryan (1922), 153 Ark. 313, 240 S.W. 405; Graves v. McConnell (1924), 162 Ark. 167, 257 S.W. 1041; and Browning v. Waldrip
(1925), 169 Ark. 261, 273 S.W. 1032.
230 Ark. at 548 (footnote omitted). The court went on to review the varying constitutional and statutory provisions at issue in the recited cases, all of which involved coinages such as "a majority of the qualified electors" or "a majority of the landowners," and all of which held that such coinages meant a majority of those who actually voted on an issue, not those who voted and might have voted. Id. at 548-51. The court concluded:
 There is no need to emphasize the matter further.[1] When the Legislature of Arkansas used the words in Sections 6 and 9 of this Act, as heretofore quoted — ". . . a majority of the qualified electors of such county at a special election called for that purpose," and ". . . and any such proposition shall be carried when approved by a majority of the qualified electors of the county" — it is clear beyond peradventure of a doubt that the words were used in their recognized legal significance and meant a majority of people of the county who voted on the proposition, and not a majority of all the people of the county who had poll tax receipts.
Applying this principle, I believe the decision to establish single-member zones in a school district must be made by a majority of the qualified electors who actually vote in the election, not by a majority of the qualified electors who reside in the district.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:JD/cyh
[1] Although it is not directly relevant to your question, the court appended the following footnote to this sentence:
 Formerly this Court held that the language, "if a majority of the electors voting at such election adopt such amendments the same shall become a part of this Constitution", meant a majority of all the electors voting at the election and not a mere majority of those voting on the particular proposition. See Rice v. Palmer, 78 Ark. 432, 96 S.W. 396; and Hildreth v. Taylor, 117 Ark. 465, 175 S.W. 40. But a Special Supreme Court of Arkansas (of which former Governor T.C. McRae was special Chief Justice), in the case of Brickhouse v. Hill, 167 Ark. 513, 268 S.W. 865, overruled Rice v. Palmer and Hildreth v. Taylor, and held that a constitutional amendment was adopted when it received only a majority of those who voted on the proposition: it was not required to receive a majority of all the people who voted at the election.
With respect to the constitutional implications of the Brickhouse
decision, see E. Wills, Tearing Down Brickhouse: Could JudicialDemolition of Brickhouse v. Hill Prompt a New Arkansas Constitution?,
54 Ark. L. Rev. 19 (2001).