## BARATARIA CANNING CO. *v.* STATE EX REL.

### [58 South. 769.]

1. LICENSES.    *Commerce.    Privilege    Tax.    Statutes.    Constitution
    United States, Art. 1, Secs. 8-10.    Constitution Miss., Sec. 112.
    Code 1906, Secs. 3497-3498.    Laws 1908, Ch. 192.*

> Code 1906, Sec. 3498, as amended by Laws 1908, Ch. 192, provid-
> ing that in addition to the privilege license imposed by Sec.
> 3497, Code 1906, which imposes a tax on canning factories, there
> shall be paid a tax fee of three cents per barrel upon all oysters
> canned and packed in and all oysters shipped raw in or from
> this state, etc., provides a method for the collection of an addi-
> tional privilege tax to that imposed in section 3497, and the
> whole tax must be paid by the local party engaged in taking or
> canning oysters in the state or by the local dealers selling or
> shipping oysters, as a privilege tax for conducting the business
> in this state, and so construed the statute does not interfere
> with interstate commerce, in violation of the Constitution of
> the United States, Art. 1, Sec. 8, nor impose duties on imports
> or exports in violation of Art. 1, Sec. 10, of that Constitution,
> nor does it destroy the equality and uniformity of the taxation
> laws in violation of the Constitution of 1890, Sec. 112.

2. SAME.

> The constitutional requirement as to uniformity of taxation has
> no reference to taxation of occupations.

APPEAL from the circuit court of Harrison county.
HON. GEO. S. DODDS, Special Judge.

Suit by the state, on the relation of the attorney-gen-
eral and the board of oyster commissioners, against the
Barataria Canning Company. From a judgment for
plaintiff, defendant appeals.

The facts are fully stated in the opinion of the court.

*Louis Goldman,* for appellant.

It is held by your honors that this statute embraces
the oysters taken from other states; we submit that it is

unconstitutional in that it is in violation of Art. 1, Sec. 8 of the Constitution of the United States which vests in Congress exclusive power to regulate commerce between the states, and of Art. 1, Sec. 10, which prohibits any state, without consent of Congress, from levying any duties upon imports or exports except such as are absolutely necessary for executing its inspection laws.

In presenting this proposition our search for authority has shown no clearer discussion of the issue than the recent case of *D. E. Foote & Co.* v. *Clagett* reported in 81 Atl. 511, and authorities therein cited. We direct the attention of the court to the fact that this is a Maryland case construing a statute similar to ours and where the oyster industry flourished and is a subject of much contention and litigation. The case before us, in our opinion, is stronger because it is not even contended here that this tax is for inspection purposes, whereas a part of the tax levied in the Foote case was for that purpose.

The first proposition to be considered is whether congress is vested with the exclusive right to regulate commerce. In *Gibbons* v. *Ogden,* 8 Wheat. 1, 6 L. Ed. 23, it was declared that this power comprehends every species of commercial intercourse among the several states, and that the grant of power leaves nothing for the state to act upon. See also *Phil. & Reading Co.* v. *Pennsylvania,* 15 Wall. 232.

Having determined that congress alone can deal with the subject of commerce between the states, we approach the question of importation with the right to dispose of the article imported. In *Brown* v. *Maryland,* 12 Wheat. 419, the right to import comprehended the right to sell. It was expressly held that the power to import was complete and there was no limitation thereof. Also 7 How. 416, this question of the sale of the imported article without restriction was passed upon.

In *Railroad Co.* v. *Pennsylvania,* 15 Wall. 276, a tax upon coal brought from another state was held to be

tax on commerce and therefore unconstitutional and void.

It will be remembered that the statute which is before us for discussion applies to the oysters that are brought from another state into our state and the tax would be on a sale thereof.

The Maryland court in 81 Atl. 511, approving the decision rendered in 15 Wall. 276, held it to be analogous to the oyster statute of 1910 of the state of Maryland, similar to ours and construed that act as unconstitutional. As set forth in Art. 1, Sec. 10 of the Constitution of the United States, "no tax can be laid by a state except such as may be absolutely necessary for executing its inspection laws."

The act before us clearly shows that this tax is not for inspection purposes. It is a tax that falls due immediately on receipt by the packer of the oysters from another state. It surely could not be held that the only way he could avoid the tax would be by consuming the oysters himself. There could be no purpose in importing the oyster except to have it packed or canned or sold.

The authorities here presented, if this act is to be held as embracing from another state, to our mind, decide its unconstitutionality; but it is earnestly submitted that this statute never contemplated oysters from another state; by its terms, it does not include them, and by no stretch of the imagination could it be stated that to embarrass the importation of oysters, would assist in the production or conservation of the oysters of this state as evidently contemplated by this and other statutes heretofore enacted.

*D. M. Graham,* for appellees.

It seems to me that this section 3498, which lays the tax question, is not susceptible of any other construction than that the tax was intended to be laid on all oysters canned and packed in this state. The court will not

construe a statute so as to change its clear meaning, and the object of construing a statute is to give it the intent of its framers, and this intent is to be found in the instrument itself. Indeed, there is no reason for a construction of this statute, and the language of it is perfectly clear and unambiguous.

In construing a section of the Constitution in *Frank Hawkins* v. *Board of Supervisors,* reported in 50 Miss. 735, the court at pages 758 and 759, uses the following language: ''When a statute or section of the Constitution is expressed in general or limited terms, the law makers shall be intended to mean what they have plainly expressed, and consequently no room is left for construction. The object of construction applied to the Constitution is to give effect to the intent of its framers and the people in adopting it. This intent is to be found in the instrument itself.''

But we do not have to rely on our construction of the intent of the legislature in laying the three cents tax per barrel, for we have authority from the State of Maryland, from which our own oyster laws were largely drafted, which decides both of appellant's contentions against it. In the case of *Applgarth* v. *The State,* reported in 42 Atl. 941, the identical question before the court here was decided. The law of Maryland required all canners to take out a license and give an estimate of the amount of the oysters that would be canned in one year, and required the canners to pay a tax of one dollar per thousand bushels for each thousand bushels of oysters packed and canned in excess of the amount named in the license issued to him. The defendant, Applegarth, in that case refused to pay on certain oysters that were packed by him in excess of the amount collected for by his license, on the ground that the oysters were brought from the waters of the state of Virginia, and that he was not liable for the tax; and the court stated the question there, which is the same question here, as follows:

"Does the fact that the appellant bought the oysters in the state of Virginia, and had them shipped to him from that state to the state of Maryland, exempt him from the payment of the license fee?"

We quote the following from the opinion in that case: "The appellant contended that the provisions of the act of 1894 relate solely to the oyster industry of the state of Maryland; and, further, that it was not the intention of the legislature to tax the canning of oysters caught in other waters than this state, or to place a burden on the packer for which he did not receive a corresponding benefit in the protection and the preservation of the article to be packed; and further it is contended that such a construction would be unreasonable and would impose an unjust burden, and if the legislature had so intended the tax to apply to other oysters than such as had been caught in Maryland waters, it would have said so in the words of the statute. But we fail to comprehend in what respect the Constitution has been violated by the provisions of this act, etc."

The appellant contends that if the section itself does include oysters from another state, then it is violative of that part of Sec. 8 of the federal Constitution which provides that the congress shall have power "to regulate commerce with foreign nations and among the several states and with the Indian tribes."

There is no doubt that congress has exclusive power to regulate commerce between the states, and that no state has a right to pass a law that interferes with the free intercourse of commerce between the states. The authorities are uniform on that proposition, both in the state and federal courts; but how the tax in question in any manner interferes with or places any burden on interstate commerce, I cannot see.

The tax in question is not laid on the oysters because they come from Alabama; indeed, the oysters could be brought from Alabama for some purpose and not be

liable to the tax in question at all; they were not liable for the tax when they were put aboard the schooner; they were not liable for the tax when they reached their point of destination at appellant's canning factory.

The case of *D. E. Foote & Co.* v. *Wm. B. Clagett*, reported in 81 Atl. 511, cited by appellant, is in no respect like the case at bar. In that case the inspectors were required to inspect the oysters, evidently while they were being transported, and the law there required every common carrier to furnish the oyster inspector a copy of his manifest, showing the number of barrels, etc., and the inspection there, and the collection of the tax, evidently did impede the free intercourse of commerce between the states. We quote this from the opinion in that case: "The packer is forbidden to buy oysters in course of transportation, except in the presence of the inspector, who himself certifies the amount of the tax, and thus the payment of the tax becomes a condition precedent to the sale, and consequently an impediment to the prosecution of that branch of commerce."

But in the case at bar no such impediment is placed on commerce. Oysters from Alabama are not interfered with by this inspector; no tax is placed on them because they come from Alabama, and, as before stated, the tax only attached after the oysters are canned and packed in this state.

MAYES, C. J., delivered the opinion of the court.

This suit is instituted by the state, on relation of the attorney general, for the purpose of recovering from the Barataria Canning Company the sum of two hundred eighty-four dollars and twenty-six cents claimed to be due the state by reason of the fact that the canning company bought and canned, in its factory situated in this state, some nine thousand barrels of oysters. In the declaration filed by the state it is stated that the oysters bought by the canning factory were taken from the wa-

ters of the state of Alabama, and brought into the city of Biloxi by the canning factory, and that the oysters so brought into the state, and bought by the canning company, were thereafter opened, shucked, and canned in the factory. The declaration then claims that by virtue of this fact the canning company became liable to pay to the state the sum of three cents per barrel on the above oysters, which aggregates the sum above named.

A demurrer was filed to the declaration, the grounds of demurrer being that under Sec. 3498 of the Code of 1906, as amended by Acts 1908, Ch. 192, the tax sought to be collected does not comprehend oysters shipped from another state into the state of Mississippi. The second cause of demurrer asserts that, if the statute does include oysters shipped from other states, it is unconstitutional and in violation of Art. 1, section 8, of the Constitution of the United States, vesting in congress the exclusive power to regulate commerce between the states. A third ground of demurrer is that, if the statute applies to shipments of oysters from other states, it also violates Art. 1, Sec. 10, of the Constitution of the United States, which prohibits any state from levying any duties upon imports or exports except such as are necessary for executing its inspection laws. A fourth ground of demurrer is that the statute violates Sec. 112 of the Constitution of the state of Mississippi, in that it destroys the equality and uniformity of the taxation laws. This demurrer was overruled, and, the defendant declining to plead further, judgment final was taken, from which judgment the canning company prosecutes an appeal.

The particular statute involved in this litigation is the amendment made by the Laws of 1908 to Sec. 3498 of the Code of 1906. This law is found in Ch. 192 of the Laws of 1908. The part of the above statute specifically involved is as follows: "In addition to the privilege license required by this chapter, a further tax fee of

three cents per barrel is hereby laid upon all oysters canned and packed in, and all oysters shipped raw in or from, this state, and on all oysters caught or taken from the public reefs or private bedding grounds for packing, canning, and for shipment or sale raw. . . . This tax shall be paid by the person, firm, or corporation packing or canning said oysters; and in case of oysters sold or shipped raw by the dealer selling or shipping the same; that is to say, by the first dealer who handles said oysters, and any oysters sold by any person who has purchased same from a dealer who has paid the license thereon, shall not again be taxed.'' It seems to us that the law is clear and consistent with the Constitution of the state and the United States. The above statute is a supplement to the privilege tax law; in fact, it is a privilege tax law itself. While in another place the act has fixed the tax at one hundred dollars for the privilege of conducting this business, it does not intend that one section of the statute shall fix the exact sum that must be paid for the privilege. The Laws of 1908 provide a method for the collection of an additional privilege tax to that named in section 3497, and the plan for ascertaining and fixing the additional amount of privilege tax is fixed by Ch. 192, section 3498, Laws of 1908. The tax is not imposed on the oysters, it is not imposed on the shipper from the foreign state into this state; but the whole tax is to be paid by the local person engaged in packing or canning the oysters in this state, or upon the local dealer selling or shipping the oysters, but the tax is imposed as a privilege tax for conducting the business in this state.

Counsel for appellant calls the court's attention to the case of *Foote & Co.* v. *Clagett,* 116 Md. 228, 81 Atl. 511. It is contended by counsel for appellant that the above case is directly in point and conclusive of this controversy, but we do not so read the case. The statute of Maryland, which was being reviewed by the court, was

101 Miss. 57

very different from our statute. In the above case it is shown that the state of Maryland for the purpose of raising revenue, undertook by statute to impose a tax on oysters shipped from foreign states before they could be sold, and the Maryland court held that the statute was void under Art. 1, section 8, of the Constitution of the United States, prohibiting any state from levying any duties upon imports or exports, except such as are absolutely necessary for executing its inspection laws. One of the contentions in the above case was that the statute was only designed as an aid to the inspection laws of the state of Maryland, but the court held that although the act provided for an inspection of oysters, since it also imposed a charge of two cents per bushel on all oysters shipped from foreign states, the act showed on its face that it was a revenue measure, and because of this held the act void as in conflict with that article and section of the federal Constitution above referred to. But the act of 1908 of this state is a very different law. The tax in this state is levied on the person, firm, or corporation packing or canning the oysters in this state after they have reached here and been sold by the foreign owner. The same is true of the privilege tax placed upon a dealer selling or shipping raw oysters. The act of 1908 does not contemplate that any tax shall be imposed upon any person importing or selling oysters in this state. Such person is not prohibited by the act from so doing. In other words, a party living in Alabama may himself ship into this state as many oysters as he desires and sell same, and, unless he localizes himself as a dealer or canner of oysters, no tax is imposed on him by the act. The tax is imposed upon the person who buys and cans them in this state as a privilege for conducting that business. And, again, the tax is imposed upon the local dealer in this state for the privilege of conducting that business in this state. A canning factory, or a dealer, may purchase all the oysters they desire from any per-

son in any other state without liability to this tax, unless the above person cans and packs the oysters after they buy them, or unless they sell or ship them as a dealer.

This act violates no section of the Constitution of the state or United States. The case of *Applegarth* v. *State,* 89 Md. 140, 42 Atl. 941, is a case directly in point. It appears from the above case that the state of Maryland had a law very similar to the law of this state. Applegarth was indicted in Maryland for a violation of the act. The state introduced testimony showing that Applegarth was engaged in the packing and canning of oysters in the city of Baltimore. The state then proved that he had failed to pay the tax of one dollar per thousand on each one thousand barrels of oysters packed and canned in excess of the amount named in the license issued to him. In defense, Applegarth offered evidence showing that the oysters in question were purchased by him in the state of Virginia, and shipped to him from that state, and that they were taken from the waters of that state. This evidence on the part of Applegarth was objected to by the state, and the court sustained the objection, and refused to admit the evidence. The opinion of the court in the above case so thoroughly states the contention in the case now on trial before this court that we can do no better than to quote it with approval. In the above case the court says: "Does the fact that the appellant bought the oysters in the state of Virginia, and had them shipped to him from that state to the state of Maryland, exempt him from the payment of the license fee? The appellant contends that the provisions of the act of 1894 relate solely to the oyster industry of the state of Maryland; and further, that it was not the intention of the legislature to tax the canning of oysters caught in other states by this statute, or to place a burden on the packer for which he did not receive a corresponding benefit in the protection and preservation of

an article to be packed; and, further, it is contended that
such a construction would be unreasonable and would
impose an unjust burden, and, if the legislature had so
intended the tax to apply to other oysters than such as
have been caught in Maryland waters, it would have said
so in the words of the statute. But we fail to compre-
hend in what respect the Constitution has been violated
by the provisions of this act, unless it be true that every
license issued to a merchant is unconstitutional, because
he may sell goods that were made in, and shipped from,
some other state. In other words, on whatever stock he
purchased outside of the state he would not be required
to pay any license. To sanction the contention of the
appellant would be to grant immunity to the citizens of
the state of Virginia by releasing them from taking out
certain licenses which the citizens of Maryland are
under the act of 1894 required to obtain. We know of no
act ever passed by the legislature of this state which was
intended to confer benefits upon other states, but which
denied to this state equal benefits. Mr. Justice Field,
delivering the opinion of the court in the case of *Webber*
v. *Virginia,* 103 U. S. 350 [26 L. Ed. 565], says: "No
one questions the general power of the state to require
licenses for the various pursuits and occupations con-
ducted within her limits, and to fix their amount as she
chooses.' And again from the same case: 'A state may
require a license for the sale of sewing machines, al-
though the machines are patented under the laws of the
United States, where there is no discrimination against
machines outside the state.' Mr. Justice Boyd, deliver-
ing the opinion of this court in the case of *State* v. *Ap-
plegarth,* 81 Md. 296, 297, 31 Atl. 961, 28 L. R. A. 812,
says: 'The appellees were indicted for engaging in the
business of packing and canning, for sale and transpor-
tation, oysters taken in the waters of this state, without
obtaining from the state a license therefor. The prose-
cution is based on Secs. 66, 67, Art. 72, of the Code of

Public General Laws, as amended by Ch. 380 of the Laws of 1894. It is contended on behalf of the appellees, that these sections are (1) in conflict with the Constitution of this state, because the license provided for is an arbitrary and unequal tax, contrary to the fifteenth article of the Bill of Rights, and not a lawful exercise of the police power of the state; and (2) that they are a regulation of interstate commerce, in violation of the Constitution of the United States. . . . The privilege of carrying on the business of packing and canning oysters is made, by this law, to depend upon the taking out of a license, and we do not think the provisions of the state Constitution looking to equality and uniformity in taxation are thereby violated. It is said in Tied. Lim. 282, that 'the most common objection raised to the enforcement of a license tax is that it offends the constitutional provision which requires uniformity of taxation, since the determination of the sum that shall be required of each trade or occupation must necessarily, in some degree, be arbitrary, and the amount demanded more or less irregular. But the courts have generally held that the constitutional requirement as to uniformity of taxation had no reference to taxation of occupation.' The right to require the payment of license fees for the privilege of carrying on business of different kinds has been recognized for many years in this state, and the license fees required to be paid have been fixed, in the discretion of the legislature, according to circumstances and the character of the business.''                *Affirmed.*