TREAS *v.* PRICE, AUDITOR OF PUBLIC ACCOUNTS.

(Division A.   March 6, 1933.)

[146 So. 630.   No. 30333.]

D. W. Houston, Sr., D. W. Houston, Jr., and E. E. Holley, all of Aberdeen, for appellants.

**Lotterhos & Travis**, of Jackson, for appellee.

Hannah & Simrall, of Hattiesburg, for appellee.

**Smith, C. J.**, delivered the opinion of the court.

The appellee sued and obtained a decree against the appellant, Charles Treas, for gasoline privilege tax under section 4785 et seq., Code 1930.

Section 4786 of that Code provides that: " . . . Every person, firm, copartnership, association, corporation or association of persons purchasing or acquiring in any manner for use on streets, roads or highways, sale or distribution, by retail or otherwise, from any source other than from a distributor or wholesale dealer of gasoline, duly licensed as such in this state, shall be deemed a distributor of gasoline and subject to all the provisions of law pertaining to distributors, or wholesale dealers of gasoline."

Under this statute one who purchases gasoline for his own use at places other than streets, roads, or highways, is not a distributor thereof within the meaning of the statute, and therefore not liable for the privilege tax for purchasing and distributing gasoline imposed by other sections of the statute; but one who sells or distributes, within the statute's definition thereof, gasoline to others is liable to the tax therefor without reference to the use to which the purchaser or distributee puts the gasoline.

The appellant purchased gasoline in Memphis, Tennessee, and therefore not from a licensed dealer in this state, and distributed it to others in the manner hereinafter set forth; and his contention is, that in so doing, he acted solely as the agent of the distributees, who paid for the gasoline and compensated him for receiving and

distributing it, and who did not purchase it for use, or use it, on streets, roads, or highways.

The case made by the evidence is substantially this: The appellant is doing business at Aberdeen, Mississippi, under two trade-names, namely, Aberdeen Lumber Company and Alco Service Station; the latter being a filling station at which gasoline is sold to the public at retail, for the privilege of doing which he executed and delivered to the appellee's predecessor in office the bond required by section 4787, Code 1930. Several farmers requested the appellant to devise a plan by which they could obtain gasoline, through him, not for use on streets, roads, and highways, and escape paying the privilege tax thereon. He consulted a lawyer, who furnished him with a form for articles of agreement for an unincorporated association, and advised him how to operate thereunder so as to accomplish this purpose, which articles of agreement the reporter will set out in full. These articles of agreement were signed by a large number of persons living in four counties, some of them signing the agreement voluntarily, but many of them being solicited by the appellant or his agents so to do. The appellant set apart two tanks at his Alco Service Station for the storage of gasoline purchased by him under this agreement. Members of the association who desired gasoline would give the appellant, or his agents, a written order therefor in the following form:

"Purchase Order.

"Tax-Free Co-operative Gasoline Association.

"(This order subject to rules and regulations printed on reversed side).

"Aberdeen, Mississippi, 19—

"Aberdeen Lumber Company

"Alco Service Station, Aberdeen, Mississippi

"You are authorized and directed by me, as a member of the Tax-Free Co-operative Gasoline Association, of Aberdeen, Mississippi, to purchase for my account from

without the state —— gallons of gasoline, and are to be shipped care of you, or either of you, in tank cars to Aberdeen, Mississippi, to be there unloaded by you in a tank and/or tanks owned by you for storage and to be delivered to me as and when needed at cost, plus freight, and a reasonable charge to you for unloading, storing and distributing to me at and from said tank and/or tanks as and when called for by me, being a price of —— cents per gallon, said gasoline or any part thereof, is not to be sold within this state or used on the streets, roads or highways thereof, and is not to be commingled with any such gasoline in said tank and/or tanks.

"———————, Member

"By ————.''

The price the member of the association was to pay for the gasoline was inserted in his order, and payment therefor was made by him to the appellant at the time the order was given. When the appellant had received orders for gasoline sufficient to fill a tank car therewith, he would order such a car of gasoline from a dealer in Memphis, Tennessee, by telephone, and direct him to bill and consign it to the Tax-Free Co-operative Gasoline Association, Aberdeen, Mississippi. When it arrived at Aberdeen, it was delivered by the carrier to the appellant, and the gasoline was transferred to one or both of the two tanks set apart by him for that purpose. The quantity ordered by each member of the association would then be delivered to him at the tank on being called for, or, if he preferred, at his residence, in a motor tank of the appellant, who charged him a compensation therefor. When a member would give an order for gasoline, it would be delivered to him then, if he wanted it, out of the gasoline then in the appellant's storage tank without waiting for the appellant to purchase it; the appellant stating that so to do was agreeable to the other members of the association. When the appellant delivered gasoline to members of the association by his motor tank,

the driver thereof would call on the members of the association who had not requested such delivery, and, if they wanted the gasoline, would deliver it to them; and if any one not a member of the association should request him so to do, he would take his order for gasoline, and, if he wanted it, deliver it to him then, if he paid therefor, and signed the articles of agreement.

The appellant's compensation for this service was the difference between the amount paid by the members of the association for the gasoline, and that which it cost him to purchase and deliver it. Fluctuations of the market were not taken into consideration; the members always paying a stipulated price per gallon for the gasoline when placing their orders therefor, without regard to what it would cost the appellant. A large quantity of gasoline so handled was delivered by the appellant to one man who owned and operated a filling station, on receipts therefor signed in the names of members of that association by him as agent. The gasoline was then transported to this person's filling station, and there delivered to members of the association represented by him, either direct from the motor tank, or after being transferred therefrom to a tank set apart by him for that purpose. What his compensation for this service was, if any, does not appear.

When gasoline was delivered to a member of this association, he would sign a receipt therefor in the following form:

"Phone 84                    Delivery Receipt 00554.
    "Tax-Free Co-operative Gasoline Association
                "Alco Service Station  ⎱ Agents
                "Aberdeen Lumber Co.  ⎰
"State of Mississippi, Monroe county, City of Aberdeen
    "Personally appeared before me, the undersigned authority in and for said city, county and state, —— the person signing this verification, who is personally known to me, and who being duly sworn, deposes and says:
    "1.   That he is a member of the 'Tax-Free Co-opera-

tive Gasoline Association' of Aberdeen, Monroe county, Mississippi, and that as such he has this day withdrawn from the tank, or tanks used by said association in storing and distributing gasoline to its members —–— gallons of gasoline as a member of such association.

"2. That said gasoline will not be sold by him within the state of Mississippi, or be used on the streets, roads or highways thereof or in violation of any of the laws of the state of Mississippi.

Gal. Ordered —–———
Gal. Rec'd  —–———
Gal. Due  —–———

—–——, Member.

—–——, Agent.

"Sworn to and subscribed before me this the —–— day of —–—, 19—.

"—–———, Notary Public."

The only requirement for admission into the association was the signing of the articles therefor. No meeting of the association was held for any purpose, and no officers were elected until after the institution of this suit.

The money paid the appellant by members of the association for the gasoline was deposited by him in a bank to the credit of the association, but was subject to his check only; he was not required to, and did not, give any account thereof to the association, but drew checks on it whenever he desired with which to pay for the gasoline purchased, and for his own personal use.

It will thus be observed that the manner in which appellant handled this gasoline differed in no respect from that in which he would have handled it as an ordinary retail dealer therein, except that it was sold and delivered to a select class of which any person who desired could become a member; his compensation for handling the gasoline in each case being the same; that is, the difference between the price for which he sold the gasoline, and that for which he purchased it, plus the expense incurred by him in storing and delivering it. In other

words, his compensation in each case consisted of the net profit realized by him from the business.

The association, being unincorporated, could not, as such, own property. Any contract in its name, made by an agent thereof, did not bind the members of the association personally, but only the agent; and in contemplation of law, as well as in fact here, the sale of the gasoline by the Memphis dealer was to, and on the credit of, the appellant in whom the title thereto vested, subject only to a possible equity which members of the association might have therein, as to the existence of which we express no opinion; it not being here material. The Tax-Free Co-operative Gasoline Association was simply another trade-name under which the appellant was doing business.

This opinion must be limited to the facts on which it is based, and must not be understood as expressing any views on the right of persons co-operating with each other in purchasing gasoline not for use on streets, roads, or highways, and dividing it among themselves after its receipt, either by themselves directly or through an agent in fact appointed for that purpose.

But it is said by counsel for the appellant, to hold the appellant liable for the tax here would impose a burden on interstate commerce, and therefore would violate the interstate commerce clause of the federal constitution (article 1, section 8, clause 3). This contention seems to be without merit. The appellant neither sold nor distributed gasoline in the package in which it was received by him, but only after it had been transferred therefrom and in broken quantities, after it came to rest in this state and had been mingled with the property therein. The interstate commerce clause, therefore, had ceased to operate on the gasoline when the appellant did that which subjected him to the tax here sought to be collected. Compare Burke v. Bass, 123 Neb. 297, 242 N. W. 606; City of Jackson v. State, 156 Miss. 306, 126 So. 2, and Barataria Canning Co. v. State, 101 Miss. 890, 58 So. 769.

The bond executed by the appellant for the privilege of selling gasoline at his Alco Service Station was conditioned as follows: "On notice of the auditor of public accounts of the state of Mississippi that said principal is delinquent under the laws above referred to, said principal will immediately upon this evidence pay to the auditor of public accounts for the benefit of the state of Mississippi all taxes, penalties, and such other expense, including attorney's fees and any and other expense, as might be incurred in collecting this tax and penalty, and on failure so to do said principal and the said United States Fidelity & Guaranty Company, as surety, hereby agrees to immediately pay the same."

The court below included in its decree an award to the appellee on this bond of one hundred fifty dollars, attorney's fee, of which appellant complains on the ground that the statute required no promise or bond from the appellant to pay "the expense, including attorney's fees and any other expense that might be incurred in collecting this tax and penalty," and did not authorize the auditor to exact such a promise and bond therefor. The condition of the bond required by the statute is, "that the licensee will fully comply with all laws pertaining to distributors or wholesale dealers of gasoline and pay all excise taxes and penalties provided for or required by this act," and the statute does not elsewhere provide for the payment by a licensee of the expense incurred by the state in collecting the tax and penalties.

Section 2901, Code 1930, provides that: "All bonds or recognizances taken by any officer in the discharge of his duty shall be valid and binding on the obligors therein, whether taken in the form prescribed or not, so that the substantial matters required be contained therein; and such bonds shall only be void so far as they may be conditioned for the performance of acts in violation of the law or policy of the state." The promise and bond by the appellant to pay the expenses of collecting the tax, while not required by the statute, is not expressly pro-

hibited thereby and is in furtherance of the purpose it seeks to accomplish; and when such a promise and bond has been given voluntarily and without coercion, as is the case here, and the licensee was given, and exercised, the privilege which he sought to obtain thereby, it is too late for him to object thereto on the ground that the statute did not require him to give such a promise or bond. U. S. v. Hodson, 10 Wall. 395, 19 L. Ed. 937. Compare State v. Bartlett, 30 Miss. 624; Stowell v. Clark, 152 Miss. 32, 118 So. 370, and Adams v. Williams, 97 Miss. 113, 52 So. 865, 30 L. R. A. (N. S.) 855, Ann. Cas. 1912C, 1129.

Affirmed.