PRICE, STATE AUDITOR, *et al. v.* INDEPENDENT OIL Co. *et al.*

(En Banc. Oct. 30, 1933.)

[150 So. 521. No. 30729.]

T. C. Hannah, of Hattiesburg (of Hannah & Simrall, of Hattiesburg), and Lotterhos & Travis, of Jackson, for appellants.

Watkins & Eager, of Jackson, Blair & Anderson, of Tupelo, and Jeff Davis, of El Dorado, Ark., for appellees.

Argued orally by **T. C. Hannah** and **Fred Lotterhos**, for appellant, and by **W. H. Watkins**, for appellee.

**Ethridge, P. J.**, delivered opinion of the court.

Carl C. White, formerly state auditor, instituted suit to recover gasoline excise taxes, imposed by the state of Mississippi, from the Independent Oil Company, a Mississippi corporation engaged in the sale and distribution of gasoline and fuel oil; the United States Fidelity & Guaranty Company, surety on its bond; the Lion Refining Company, an Arkansas corporation engaged in the refining and sale of gasoline and motor oil; W. H. Reed, and certain other individuals purporting to be organized under the name of the Farmers' Association of North Mississippi. The defendant W. H. Reed was the agent of the Lion Refining Company for the sale of its products in Mississippi, and also agent for the Farmers' Association of North Mississippi. He was to get a commission on all sales made for the Lion Refining Company.

The Independent Oil Company had its domicile at Tupelo, Mississippi, but the Lion Refining Company owned sixty-two per cent. of its capital stock. The activities of Reed had procured one hundred forty citizens of Mississippi who were the owners or lessors of the en-

gines or motor equipment, etc., to enter into the following agreement:

"The name of this Organization shall be the Farmers Association of North Mississippi. The merchandise shall consist of the following: Owners or lessors of tractors which are not used on the roads of the state of Mississippi. Owners or lessors of stationary gasoline engines; Owners or lessors of cleaning and pressing or dyeing plants. Owners or lessors of aeroplanes. Owners or lessors of any kind of engines or motor equipment which are not used on the roads in the state of Mississippi. The business of this association shall be in charge of an Agent appointed by the members of this Organization for a period of five years. The purpose of this Association is to provide its members with motor fuels as cheaply and advantageously as the same can be done. To carry out the purposes of the Association, the Agent shall purchase from time to time motor fuel in quantities sufficient in his judgment to meet the needs of the members of this Association, and may store the same and may contract with persons or corporation for delivery of the same to the individual members of the Association, and may pay to the said persons or corporation such sum per gallon for handling such motor fuels and oils as he may deem fair and proper. The Agent shall have delivered to its members motor fuel only for cash, and the price for such motor fuel to any individual member of the Association shall be the actual cost of the same to the Association, plus his commission, the expense of handling, the expense of storing and other expenses that may be necessary, freight and any evaporated or spillage or loss of shrinkage.

"All members shall pay into the Association at the time of signing this agreement, $1.00 to cover incidental expenses in connection with the organization of this Association.

"All members hereby agree to place with their agent orders for all motor fuel used by them or their agents in

farming operations, or in stationery gasoline engines, or in other motor equipment not to be used on highways in the state of Mississippi, from time to time, for a period of five years from this date, and they hereby pledge that no motor fuel purchased for them by their agent or delivered to them by their Organization shall be used in any motor vehicle going upon the highways nor resold for any purpose whatever. The members also agree that proof of the violation of any of the Articles in this Agreement shall warrant their Agent from not accepting any more orders from them to purchase motor fuel for them.

''Whenever satisfactory proof shall be by any person presented to the Agent that any member of the Association has violated this agreement, then the Agent shall not purchase for this member any more motor fuel.

''Whenever in the opinion of the Agent, such action is desirable, the fee for admission into the Association may be reduced or abolished altogether.

''The Agent shall invite from time to time a statement from every member of the Association of his future requirements of gasoline and shall, when he has received advance notices from individual members of the Association of their requirements of gasoline in an amount equal to a tank car or more, purchase sufficient gasoline to meet the advance notices of the requirements, purchased from out of the State, and arrange with a distributing agent whom he shall contract with, for temporary storage of the same, and delivery to individual members. He shall, at no time, purchase in the name of the Association gasoline in a quantity in excess of aggregate amount which he has received notices from the members to purchase for them, and no delivery of gasoline shall be made to any members who have not therefor given notice of his requirements of the same according to the terms of this section. All members of said Association shall purchase storage equipment for handling all motor fuels they use. Witness our signatures this the 9th day of March, 1931.''

At the same time the parties entered into this agreement, they also signed an agreement with W. H. Reed, reading as follows:

"This agreement, this day made and entered into by and between The Farmers Association of North Mississippi, the members of which have hereto subscribed their names, and all such parties who may subsequently subscribe their names hereto, parties of the first part, and W. H. Reed, of Memphis, Tennessee, party of the second part, Witnesseth; Parties of the first part have formed an association or organization for the purpose of purchasing co-operatively gasoline and lubricating oils and greases, and hereby appoint party of the second part, for a period of five years, as their agent to purchase gasoline and other petroleum products, and to enter into contracts for handling, storing and delivering of said products.

"Parties of the first part agree to pay party of the second part for acting as their agent and doing all necessary clerical work and handling funds and other work necessary as their agent, one-half of one cent per gallon on all gasoline purchased by agent for parties of the first part, and ten per cent on all lubricating oils and greases.

"Party of the second part shall be responsible to parties of the first part for all monies entrusted to him and all other products, less whatever evaporation and shrinkage there may be, but shall not be required to furnish any bond to cover the handling of such monies. "Witness our signatures this the 9th day of March, 1931."

A contract was entered into between the Independent Oil Company and W. H. Reed, purporting to act as agent of the Farmers' Association of North Mississippi, reading as follows:

"This agreement this day made and entered into by and between the Farmers Association of North Mississippi, through their agent, W. H. Reed, parties of the first part, and the Independent Oil Co. a Mississippi

corporation of Tupelo, Mississippi, parties of the second part, Witnesseth;

"Party of the first part, acting as Agent for the Farmers Association of North Mississippi, and the party of the second part having in its possession and owning the conveniences and equipment necessary for the storing, distribution and deliveries to the members of the Farmers Association of North Mississippi;

"It is therefore mutually agreed that the party of the second part shall from month to month from this date, be the delivering agent for all gasoline purchased by the Agent for agricultural purposes or stationery gasoline engines, or aeroplanes, or cleaning plants, but not for use along the highways and not for resale, and shall deliver to the members of the Farmers Association of North Mississippi at such points in the State of Mississippi where the party of the second part has necessary storage and delivery facilities, and that the party of the second part shall receive from the transportation company such gasoline, unload and store the same for the members of the Association, and will, from time to time, as the needs of the members of the Association may require, deliver said gasoline to members of the Association who so have purchased the same; it being understood that the party of the second part shall not be required to make such deliveries to any members in quantities of less than full truck tank loads.

"As compensation to party of the second part for its services in so unloading, storing, handling and delivering said gasoline, the party of the first part as agent for the Association, shall pay to the party of the second part the sum of three and one-half cents per gallon on said gasoline delivered, plus one-half cent per gallon for every ten miles over twenty-five miles hauled.

"Party of the second part shall not be required to furnish storage equipment to members, but members shall purchase their own storage equipment.

"This contract shall be cancellable by either party on thirty days' written notice.

"Witness our signatures this the 24th day of March, 1931."

After the signing of this instruments, W. H. Reed arranged to open a bank account at Tupelo, Mississippi, in the name of the Farmers' Association of North Mississippi, and employed, without compensation, a Mrs. Elizabeth Colston, an employee of the Independent Oil Company, to keep the records and sign checks for the Farmers' Association of North Mississippi. The Independent Oil Company procured estimates, from the individuals whose names were signed to the alleged articles of the association, as to the amount of gasoline, oils, or fuels which they would need for a given period of time, which estimates were, by Mrs. Colston, tabulated and transmitted to W. H. Reed and he would order gasoline, etc., to be shipped from the Lion Oil Refining Company to the Farmers' Association of North Mississippi. No individual shipments were made to such members; no individual orders for such were given the Lion Oil Refining Company; no bills or invoices were sent to these individuals; and no money was collected prior to delivery of the cars of gasoline at Tupelo, Calhoun City, or Okolona, in accordance with the estimated needs of the association at either of these points. The Independent Oil Company, using its employees for that purpose, kept the books at its office.

This case is controlled by the case of Treas v. Price (Miss.), 146 So. 630. There is some difference in the method of the transfer between the Farmers' Association and the Independent Oil Company, in the Treas v. Price Case from the case at bar, but we think this difference does not affect the legal liability of the parties. In the first-mentioned case, it was held that the company, being unincorporated, could not own property, and that a contract made by an agent of such unincorporated body

would not bind the members personally, but only the agent. The articles of agreement in the case at bar do not constitute the various signers thereof partners. Partnerships are made by contract, either express or implied, unless a statute provides a different method, or provides that certain methods of doing business shall constitute a partnership. Of course, partnerships may be implied or inferred from the manner in which the business is done, but in the case at bar, the association does not come within this principle. The agreement does not authorize the alleged agent to buy in gross, and bind the signers jointly and severally, or severally, for the whole amount.

Appellee urges that the question as to the liability must be governed by the laws of Arkansas, the Lion Refining Company being in El Dorado, Arkansas. The trouble with this contention is that the Farmers' Association of North Mississippi is not a person or entity capable of making a contract, and there was no vendee in Arkansas; the cars were shipped into Mississippi, delivered to the Independent Oil Company, accepted by it in Mississippi, and the money was collected in Mississippi.

The status of parties, as partners, under any written instrument, or any agreement, is to be governed by the laws of the state where the parties reside. See 5 C. J., sec. 32, p. 1342; A. L. I., Restatement of Conflicting Laws, 163, 201, sec. 375. Under the decision in the case of Treas v. Price, supra, there was no title to property in the Farmers' Association of North Mississippi. The agreement entered into by the signers thereof does not undertake to bind any one for an obligation of the other. The title to property of the Lion Refining Company did not pass to the signers of these various agreements until it was delivered to them by the Independent Oil Company, and when they paid that company, the obligation ceased.

From the record, it would seem that the Independent

Oil Company, the Lion Refining Company, and the said W. H. Reed, all proceeded and acted upon the idea that it was immaterial, after the order was placed, as to who furnished the gasoline, etc., to the signers of the articles of the association. It appears that in some instances the estimates were considerably larger than the amount furnished, and in other instances, the estimates were for less than the amount delivered.

Inasmuch as the articles of agreement do not constitute a partnership under the laws of Mississippi, and inasmuch as the Farmers' Association has no capacity to own property, or to contract as an entity, the Independent Oil Company, in handling and making distribution of gasoline, motor fuel, etc., was selling and distributing same in purview of the act. The chancellor, in the court below, held to the contrary, and dismissed the bill; but the amount is stated in the record, and is undisputed, and the Independent Oil Company is subject to the tax imposed by law, and the judgment of the court below will be reversed, and judgment rendered here on the amount of gallonage delivered, at the tax rate imposed by the statute.

Reversed and rendered.

**Smith, C. J.,** dubitatur.

**Anderson, J.,** took no part in this decision.